MURRAY HILL LAND COMPANY, Respondent, vs. MILWAUKEE LIGHT, HEAT & TRACTION COMPANY, Appellant.

*October 4—October 24, 1905.*

*Railroads: Condemnation of land: Proof of title: Admission in petition.*

1. The filing of a petition by a railroad company for condemnation of lands under sec. 1846, Stats. 1898, is the commencement of a suit, and the petition is a part of the record in the case.

2. An admission in such a petition that a certain person is the owner of the lands in question is conclusive upon the company, and as against it he need not make further proof of his title, even upon the trial of an appeal from the award of commissioners.

3. Where the landowner institutes the condemnation proceedings he must prove his title unless it be admitted.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

It appears from the record that December 23, 1901, the defendant traction company filed in the circuit court its verified

petition, addressed to said court, for the condemnation of the lands therein described, for the purposes of acquiring, constructing, maintaining, and operating an electric street railway thereon; that the said petition, among other things, contained a description of the several pieces and parcels of land fronting and abutting upon said highway and therein sought to be condemned, "together with the names of the owners and persons interested in the same;" that among the lots so described are some twenty or more of which the plaintiff in this action, the *Murray Hill Land Company,* is therein alleged to be "the owner." The defendant therein prayed that it might be determined that the defendant had the right to take the said premises so described, under and by virtue of the power of eminent domain, for the uses and purposes therein mentioned; that three disinterested and competent freeholders be appointed as "commissioners to ascertain and appraise the compensation to be made to the owners or persons interested in said premises for the taking of said premises by" the "petitioner for the uses and purposes" therein "mentioned; and that the time and place of the first meeting of such commissioners be fixed, and that such other orders and proceedings be had in the premises" as might "be necessary and proper." Thereupon three such commissioners were duly appointed by the circuit court, and on May 19, 1902, they filed their award of damages in writing in said court, and stated therein that "the aggregate amount of the award made for lots owned by the plaintiff herein" was $1,773.24, distributed upon nineteen several lots therein described. June 18, 1902, the defendant company appealed to the circuit court "from those certain awards of the commissioners" wherein and whereby they "fixed and determined the amount of compensation to be paid to *Murray Hill Land Company* as owner" of the nineteen lots thus described, "in consequence of the taking and appropriating by said company of a certain easement described" in said petition. Previously and on June 9, 1902,

the plaintiff had appealed to the circuit court from so much of said award as related to such lots. Within sixty days from the filing of said award the defendant paid into court the amount thereof ($1,773.24) so awarded to the plaintiff, which sum the plaintiff, without prejudice to its said appeal, withdrew from the court November 27, 1903. By the agreement of the parties the said two appeals relating to said lots were tried together before a jury, commencing November 18, 1904, and continuing until November 23, 1904. At the close of the trial the jury returned a verdict in favor of the plaintiff and assessed its damages at $5,666, together with interest thereon from May 19, 1902; and thereupon it was ordered by the circuit court that judgment be rendered thereon in favor of the plaintiff and against the defendant for $5,666, with interest thereon from May 19, 1902, to November 27, 1903, and interest on $3,892.72 thereof from November 27, 1903, to the entry of such order, and for the costs of the action. December 22, 1904, the defendant moved the court, upon the records, files, and proceedings therein and upon the minutes of the presiding judge, to vacate and set aside such order for judgment, and said verdict of the jury, as unsupported by and contrary to the evidence, and to grant judgment in favor of the defendant and against the plaintiff on the uncontradicted evidence, which motion was denied by the court December 23, 1904. Thereupon and on December 24, 1904, and on motion of the plaintiff, it was ordered and adjudged that the plaintiff herein do have and recover of and from the defendant the sum of $6,438.97 damages and $75.71 costs and disbursements in the action, amounting in the aggregate to $6,514.68; and it was therein further ordered and adjudged that the sum of $1,773.24 so paid into court by the defendant, and withdrawn by the plaintiff as stated, be applied in part payment of said judgment. From such judgment the defendant appeals.

*Clarke M. Rosecrantz,* for the appellant.

For the respondent there was a brief by *Otto R. Hansen,*

attorney, and *W. J. Turner*, of counsel, and oral argument by *Mr. Hansen*,

CASSODAY, C. J.    1. At the close of the testimony the defendant requested the court to direct the jury to return a verdict in its favor, for the reason that nothing had been shown to warrant them in rendering a verdict in favor of the plaintiff, which request was denied by the court. The court then submitted to counsel a form of verdict merely calling upon the jury to assess the plaintiff's damages, which form of verdict counsel conceded to be correct; but counsel for the defendant expressly stated that the defendant did not consent nor concede that there was anything in the case for the jury. Such requests and claims of counsel were based upon the contention now made that on the trial of this action in the circuit court it was incumbent upon the plaintiff to prove title to the premises in question; and that the plaintiff had failed to make such proof. On the part of the plaintiff it is claimed, in effect, that the petition for condemnation is a part of the record in this action, and that in such petition the defendant expressly alleged that the *"Murray Hill Land Company"* was the "owner" of such premises, and prayed the court to determine the defendant's right to take the premises so described, under and by virtue of the power of eminent domain, for the uses and purposes therein mentioned, and that commissioners be appointed to ascertain and appraise the compensation to be made to the plaintiff, as such owner, for the taking of such premises; and that the court, in effect, determined such ownership prior to the trial of this action. The petition filed "for the purpose of acquiring such title" appears to have been signed and verified, and stated "the names of the owners and parties interested" in the premises therein sought to be condemned, and such other facts as were required by the statute. Sec. 1846, Stats. 1898. "The filing of such petition," as stated in that section, was "the commencement of a suit in

said court" against the several landowners mentioned therein, including the plaintiff in this action. Id. "Upon the filing of such petition the said court or judge thereof" was therein required to give notice, as therein prescribed, to the several landowners and persons interested therein as mentioned in such petition. The filing of such petition has frequently been held to be essential to give the court or judge jurisdiction to appoint such commissioners to ascertain and appraise the compensation to be made to such landowners. *Winnebago F. Mfg. Co. v. Wis. M. R. Co.* 81 Wis. 389, 51 N. W. 576; *C., M. & St. P. R. Co. v. Richardson,* 86 Wis. 154, 56 N. W. 741; *In re Metropolitan T. Co.* 111 N. Y. 588, 19 N. E. 645; *Rochester R. Co. v. Robinson,* 133 N. Y. 242, 30 N. E. 1008. "On presenting such petition . . . with proof of publication of notice," and on hearing the parties, the court was required to "determine whether the railroad corporation" was "entitled to take the whole or any part of the land sought to be acquired," before appointing commissioners. Sec. 1847, Stats. 1898. The statute required the report of the commissioners, including their award, to be filed in the office of the clerk of the court, and by him recorded "in the judgment book of such court." Secs. 1848, 1850, Stats. 1898. The statute also provided in effect that at any time thereafter the corporation might pay to the owners of the lands so taken, or deposit with such clerk, the amounts so awarded, and thereupon enter upon and take and use the land for the purposes for which it was condemned. Id. Of course, the damages so awarded were open to modification on appeal. Secs. 1849, 1850, 1851, Stats. 1898. Obviously, the report and award of the commissioners constituted a part of the records in the case; and we are constrained to hold that such petition for condemnation was also a part of the records in the case.

2. Nevertheless it is contended by counsel for the defendant that the appeal from the award to the circuit court opened up the whole case for trial in that court, and hence that it was in-

cumbent upon the plaintiff to prove title to the premises or go
out of court.    In support of such contention counsel rely upon
certain early decisions of this court.    There is some plausi-
bility in the contention.    In the leading case so relied upon
the plaintiff appealed from the award of the commissioners
and increased his damages in the circuit court; and from the
judgment entered therein the railway company appealed to
this court.    The trial court refused to charge the jury "that
the plaintiff was not entitled to recover anything for damages
to or for the lands themselves to which he had shown no title,
. . . but instructed the jury that possession and occupancy
under color of title were sufficient for the plaintiff to recover."
*Robbins v. M. & H. R. Co.* 6 Wis. 636, 643, 644.    Such rul-
ings were there held to be erroneous; and Mr. Justice SMITH,
speaking for the court in respect to them, there said:

"The party from whom it [land] is taken can, obviously,
demand payment for no greater interest than he may have
had therein.    To enable the plaintiff to recover at all he must
show some title.    If it be a bare possession. or occupancy he
certainly cannot demand and recover payment for the fee.
. . . There can be no presumption of title in a proceeding of
this kind.    It must be shown, and compensation awarded ac-
cordingly."

The decision of the case in this court turned upon the in-
structions given and instructions refused.    The case thus re-
ported fails to give the petition for condemnation or make any
reference to it.    The bill of exceptions and briefs of the re-
spective counsel are contained in our collection of "Briefs and
Cases," vol. 13.    But there is no reference therein to any
such petition.    The award of the commissioners is given, and
they "appraised the damages sustained" by the plaintiff by
the taking of the land specifically described at less than one
eighth of what was found by the jury.    The bill of exceptions
states that "the issue on said appeal" came on to be tried be-
fore a jury, but otherwise failed to state such issue.    The
plaintiff was allowed to prove the land he was in possession

of and tilling as a farm at the time of the construction of the road and the appraisal of the commissioners, and also to give in evidence certain deeds to himself, without showing title in his grantor, "for the purpose of showing that he" was "in possession with color of title." The award of the commissioners and the assessment of damages in that action were made, under and pursuant to the special charter, to the defendant in that action. Secs. 11, 12, 13, ch. 450, Laws of 1852. That act provided that when the corporation could not agree with the owner for the purchase of the land taken, or as to the compensation to be paid to the owner, then it should "be lawful for the judge of the circuit court, . . . on application of either party, . . . to appoint three" commissioners to "estimate the value of the land so taken or required by the said company, and all damages which the owner or owners thereof" should sustain or might have "sustained by reason of the taking." Sec. 12. But the act nowhere prescribed what should be contained in such application. It did provide that the report of the commissioners should be filed with the clerk, and, in case there should be no appeal within the time prescribed, then the same should be recorded and judgment entered thereon. It also provided that, in case either party appealed therefrom, then such appeal should be tried in the same manner as other issues tried in said court, "and the jury impaneled to try the same" should "find the value of the land so taken or required by said company, and the damages which the owner or owners thereof" had sustained or might sustain by the taking of the same. Id. As stated by the revisers of the Statutes of 1878, the sections of our statutes here involved were taken from the general railroad act of 1872 and the amendments thereto. As indicated, they are broadly different from such special charter, particularly as to requisites of such petition, the proceedings thereon, the effect of the award, and the vesting of title.

In *Diedrich v. N. W. U. R. Co.* 42 Wis. 248, cited by coun-

sel, the title was put in issue and tried in the circuit court; and it was held by this court, on the merits, that the title asserted by the plaintiff was "not within the strip of land bounded by the natural shore of the lake," but was "land made outside and in front of it, upon the natural bed of the lake." Page 261. And so the court concluded that the plaintiff had "wholly failed in sustaining his title to the *locus in quo.*" Page 272. There is no intimation in that case that an admission in the petition made by a railway company for the condemnation of land of which the plaintiff is the owner is not available to the plaintiff on an appeal from the award. In fact the opinion of this court in that case makes no reference to any petition for condemnation, much less to the contents of any such petition or any admission therein. And yet the syllabus of the case is open to the inference that, "on appeal to the circuit court from the appraisal of commissioners," the plaintiff must always make "proof of title in himself to the land taken" or go out of court. The same is true of *Robbins v. M. & H. R. Co., supra,* and *Wooster v. Sugar River V. R. Co.* 57 Wis. 311, 15 N. W. 401. In this last case the petition of the railway company stated that the plaintiff was the owner of the land and that one Bowen had, or claimed to have, a mortgage thereon. The commissioners made their award and apportioned the same between the plaintiff and such mortgagee. The plaintiff appealed from the award to the circuit court. On the trial in that court the amount was largely increased by the jury, but no reference was made to the claim of the mortgagee, and the judgment thereon made no provision for the payment of anything to the mortgagee. The company appealed to this court, and assigned such failure to provide for the payment to the mortgagee as error. But it was overruled and the judgment was affirmed. It appears from the report of the case that the plaintiff proved his title to the land, but the mortgagee was not a party and no proof was made of his interest. It was there indicated, in the opinion

of Mr. Justice Lyon, that, "had the railroad company desired to litigate on the trial the question" of the mortgagee's interest, it should have done so.   Besides, it was there expressly stated that "no good reason" was "perceived why the defendant" might "not pay the amount of the judgment into court, and apply to the court to order the sum awarded to" the mortgagee "to be paid to him" if it should "be made to appear" that the mortgagee had "an interest in the land."   In other words, it was held that the company still had its remedy for the irregularity so complained of.

Under our statutes (secs. 1850, 1851) above referred to, the filing of the award of the commissioners in condemnation proceedings and the payment of the amount thereof by the corporation as therein prescribed vest the title and exclusive use of the premises in the corporation, subject to the amount of the award being increased or diminished on appeal; and then the question of value relates back to the time of filing the award.   This, in effect, has often been declared by this court. *West v. M., L. S. & W. R. Co.* 56 Wis. 318, 322, 323, 14 N. W. 292; *Uniacke v. C., M. & St. P. R. Co.* 67 Wis. 108, 29 N. W. 899; *Taylor v. C., M. & St. P. R. Co.* 81 Wis. 82, 51 N. W. 93; *Neilson v. C. & N. W. R. Co.* 91 Wis. 557, 559, 560, 64 N. W. 849; *Stolze v. M. & L. W. R. Co.* 113 Wis. 44, 52, 88 N. W. 919.   The corporation is interested in obtaining a perfect title to the land for a reasonable compensation. Upon the amount of compensation being determined, the owner or owners and the several persons interested in the land are only concerned with the distribution of the money so paid for the land.   Consistent with the theory of the statutes, the title to the land should be determined before or at the time it so vests in the corporation.   As already shown, the verified petition of the defendant company in the case at bar alleged that the plaintiff was the owner of all the lands in question. That admission has never been withdrawn nor disclaimed. The question recurs whether it was conclusive on the defend-

ant on the trial in the circuit court. The precise question has never been determined by this court. It has, however, frequently been determined in other jurisdictions under similar statutes. Thus it has been held in Minnesota that "the petition of the corporation, alleging title in the" landowner, "admits that fact for the purposes of condemnation." *Wilcox v. St. P. & N. P. R. Co.* 35 Minn. 439, 443, 29 N. W. 148. It was there said by the court that the petition admitted the plaintiff's title to the lots there sought to be condemned, and that "no evidence of his title was necessary to sustain his recovery." And then, after stating that "the question of title could not be tried upon affidavits" after verdict, the court said:

"Whatever remedy the corporation may have had as against its admission of title was either through a timely and effectual abandonment of the proceedings, or by a seasonable application to the court for leave to amend the averment of title in the petition, which, in a proper case, we think might be allowed."

To the same effect: *G. B. & L. R. Co. v. Haggart,* 9 Colo. 346, 12 Pac. 215; *Peoria & R. I. R. Co. v. Bryant,* 57 Ill. 473; *Peoria, P. & J. R. Co. v. Laurie,* 63 Ill. 264; 7 Ency. Pl. & Pr. 528, 574, and cases there cited; 2 Lewis, Em. Dom. (2d ed.) § 441.

In this last work it is said that "where proceedings are instituted by the party seeking to condemn the property, and it is alleged in the petition that certain persons are owners of the property desired, proof of title is dispensed with, and the petitioner is estopped to dispute the title as alleged in the petition." These authorities are in harmony with the theory of our statutes and the logic of the decisions under those statutes. We must hold that the admission of the plaintiff's title to the premises in question in the defendant's petition for condemnation is conclusive in this action. In so far as the early cases in this court hold, or seem to hold, to the contrary, they

must be deemed to be overruled. What has been said is limited to proceedings for condemnation instituted by the corporation. But "where the owner takes the initiative and institutes proceedings under the statute for an assessment of damages, . . . he must prove his title, unless it is admitted by the proceedings, as that lies at the foundation of the suit or proceedings." 2 Lewis, Em. Dom. (2d ed.) § 440. See *Walton v. G. B., W. & St. P. R. Co.* 70 Wis. 414, 36 N. W. 10; *Taylor v. C., M. & St. P. R. Co.* 81 Wis. 82, 51 N. W. 93.

*By the Court.*—The judgment of the circuit court is affirmed.