# CASES DETERMINED

## January Term, 1909.

JEFFERY and wife, Respondents, vs. CHICAGO & MILWAUKEE
ELECTRIC RAILROAD COMPANY, Appellant.

*January 6—February 16, 1909.*

*Railroads: Condemnation of land: Vesting of title: Election to take
lesser estate: Mitigation of damages: Tender back of easements,
etc.: Crossings: Offer of option on other lands: Evidence of
value: Special verdict: Duplication of damages: Existing ease-
ment as affecting damages: Instructions to jury.*

1. Where land has been condemned for the use of a railroad and
the right to the exclusive use thereof has vested in the rail-
road company under the award, it cannot be surrendered in
whole or in part, upon an appeal from the award, without the
consent of the landowner.

2. Nor can the defendant railroad company, upon such appeal, elect
to take a lesser estate or different interest than that con-
demned or, for the purpose of mitigating damages or in lieu
of damages or value, tender back rights, easements, uses, or
conveniences other than the "suitable and convenient farm
crossings" provided for in sec. 1810, Stats. (1898).

3. Such crossings as the railroad company may so tender and be
allowed to construct and maintain in mitigation of damages
must be constructed and maintained upon the lands taken, or
upon such lands and other lands of the company, without in-
terference with other land or property of the plaintiff.

4. The fact that other lands in the immediate vicinity could be
purchased from a third person at a reasonable price, to which
the plaintiff might shift his business, cannot be shown in such
a case to reduce the damages to which plaintiff is entitled.

5. An offer to show that the defendant company held an option for
the purchase, at a certain price, of adjoining land upon which

Jeffery v. Chicago & M. E. R. Co. 138 Wis. 1.

plaintiff might extend his business, and that defendant was ready to assign this option to plaintiff, could have no relevancy except as tending to prove the value of land in that vicinity; and without sworn testimony as to the truth of the statements in the option it was not competent evidence of such value.

6. On appeal from the award in proceedings to condemn land for a railroad the questions submitted to the jury were: (1) What was the fair market value at the date of the award of the strip of land condemned, "considering said strip as a part of plaintiff's entire tract and premises as used in his business?" and (2) In what amount was the fair market value of the remainder of plaintiff's premises depreciated at said date by the taking of the strip condemned? *Held*, that in answering the first question the jury necessarily included some portion at least of the damage to the remainder of the premises, and thus there was inevitably a duplication of the damages in that respect.

7. The admission of evidence as to the value of the land taken "considered as an integral part of the entire plant and property," and "as a part of the entire plant and manufacturing site belonging to the plaintiff, including the machinery and fixtures, considering the plant as an entirety," was erroneous because, in connection with the questions so submitted to the jury, it necessarily led to duplication of damages.

8. The finding of the jury as to the value of the strip taken, viewed in the light of the evidence, is *held* to show that they included therein a portion of the damage to the remainder of the premises and that there was thus a duplication of damages.

9. The fact that a strip across plaintiff's land, partly included in the strip condemned, was subject to an easement entitling certain other persons to use it in common with plaintiff for the passage of cars, should have been submitted to the jury upon the question of damages; and although the requested instruction was not technically correct, yet, the court's attention having been called to it, it was error to omit all instruction on the subject.

MARSHALL, J., is of the opinion that the questions submitted to the jury were strictly proper, especially in connection with the charge of the court, carefully warning the jury against duplication of damages; but is of the opinion, nevertheless, that the damages found are so excessive as to show that the jury did not heed such warning or disregarded the evidence.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Reversed*.

The appellant, a corporation organized under the general railroad act of the state of Wisconsin and operating its line by electric power, in November, 1905, filed its petition for condemnation, in which it averred that the lands belonged to one of the respondents, *Thomas B. Jeffery;* and prayed that the whole of the lands described in the petition be taken. The lands described consisted of a strip 100 feet wide and 1,013 feet long and was a part of the manufacturing plant and site of the respondent. The court, on the hearing of the petition, determined that all of such real estate was required by the appellant for the purpose of constructing, maintaining, and operating its main line of railway and that the appellant was entitled to take the whole of the real estate described in the petition, and appointed commissioners in accordance with the statute. The commissioners made and filed their award March 3, 1906, wherein they found that the respondent *Thomas B. Jeffery* was the owner of the premises in fee sought to be condemned, and that the value thereof, including the inchoate right of dower of his wife, *Kate E. Jeffery,* was $50,508. Upon making such award the appellant entered into the exclusive possession of the lands condemned and built and constructed a system of railroad tracks for the purpose of operating cars thereon. The petitioner, appellant here, appealed from the award, and upon the trial in the circuit court counsel for appellant made the following offers to the attorney for respondents:

"Thereupon the defendant made the following offer, and at the request of the plaintiffs the jury was excluded:

"The defendant, the *Chicago & Milwaukee Electric Railroad Company,* offers to stipulate and bind itself either:

"(1) To maintain a crossing over its tracks at the point where the crossing now exists, or at such other point as the plaintiff may designate between the works proper of the plaintiff and that track which is known as the 'testing' track, in perpetuity, and to keep it planked and in good condition, and to maintain in perpetuity at this crossing a bell or signal, to be operated by electricity, which will operate automatically

whenever any car gets within the block, so called, approaching this crossing, the block being about 1,000 feet north and 1,000 south of the crossing.

"(2) The defendant offers to stipulate and bind itself to construct a subway, if permitted by the plaintiffs, under the defendant's tracks leading from such portion of the parcel of plaintiff on the east side of its tracks to such part of his tract on the west side of the defendant's track as may be convenient for and designated by the plaintiff, and to maintain it in perpetuity and keep it drained; such subway to furnish complete and safe means of ingress and egress from the parcel of land now used by the plaintiff as a testing track.

"(3) The defendant also offers to stipulate and bind itself to maintain a conduit, not exceeding twenty-four inches in diameter, under its right of way, from that portion of the plaintiff's works lying to the east of the right of way to the portion of plaintiffs' land on the west thereof; to maintain the same in perpetuity; such conduit being for the use of the plaintiff for laying steam pipes or electric wires or other means of transmitting power or heat or light from one portion of plaintiffs' property to the other.

"(4) The defendant also offers to stipulate and bind itself to give leave to the plaintiffs to build and maintain across defendant's right of way two, or even three, bridges, provided the bridges give a clear height of twenty-three feet from the top of the rails of the defendant's track, the supports to be on the ground of the plaintiffs, and not upon the right of way of the defendant.

"The Court: May I ask, Mr. Quarles, just what purpose you design here that is to serve in this case?

"Mr. Quarles: We propose to ask a special verdict—damages without any stipulations, damages with one or more of them, and then follow the line indicated by the supreme court of Wisconsin, which was that judgment might be entered for the larger amount, and stayed as to a part diminution if found by the jury, until such time as the court might fix for the completion of the offer."

The defendant made the following offers, the jury being excluded:

"Mr. Lines: The defendant offers to bind itself, and hereby offers to grant, by proper conveyance to the plaintiff, the right

to construct and maintain, under the right of way of the defendant, such subway as the plaintiff may deem sufficient and necessary for the purpose of access to the grounds occupied by his testing track, by machines and by teams and by men, and for any such purpose in connection with the plaintiff's business, the same to be constructed upon such plans and specifications as the plaintiff may desire, providing the same does not interfere with the use of the right of way for railway purposes by the defendant; the same to be constructed and maintained at the plaintiff's expense. And also hereby offers to grant to the plaintiff the right to construct and maintain, at his own expense, under the right of way of the defendant, such conduit or conduits as the plaintiff may desire, for the purpose of transmitting heat, power, light, or water from one portion of plaintiff's premises to the other; the same to be located at such point or points as the plaintiff may elect, and to be constructed upon plans and specifications selected by plaintiff; but in such manner as not to interfere with the use of defendant's right of way for railway purposes.

"Defendant offers to prove, by cross-examination of *Mr. Jeffery,* and such other witnesses as plaintiff may produce upon the question of damages to plaintiff's property, the extent and amount of the damages to that property in case of the acceptance by the plaintiff of any or either of the offers which defendant has made to the plaintiff, and also to prove such damages by witnesses called by the defendant.

"It is thereupon stipulated in open court that this offer of a grant, and also offer of proof, is made and is to be considered as having the same force and effect as though made with a witness upon the stand, subject to the understanding that plaintiffs object to the stipulations and to the offers of proof as incompetent, irrelevant, and immaterial at this time, which objections were sustained by the court. Exception by defendant.

"The defendant further offers to prove that on the 26th day of January, 1906, the defendant served on the plaintiffs a notice that there had been left with Charles A. Tarbell an option, executed by Frances C. Newell and others, owners of a strip of land lying immediately west of plaintiff's property and between it and the Bain private road, so called, as shown on plaintiff's Exhibit E, for the sale of said property at the price of $2,327 at any time within three months from the date of

said option, to wit, January 8, 1906, said option running to
Albert C. Frost, of the city of Chicago, or his heirs and as-
signs, together with an assignment of said option from said
Albert C. Frost to the plaintiff, which notice had attached
thereto a copy of said option and assignment, and further no-
tified the said plaintiff that the same would be delivered to
*Thomas B. Jeffery* upon his signing a receipt for the same, at
any time prior to the first meeting of the commissioners to be
appointed to award the compensation in the matter of the con-
demnation of the strip of land in question.

"Defendant also offered to prove that the defendant de-
posited the original option, and the assignment thereof men-
tioned in the notice served upon plaintiff, with Charles A.
Tarbell of the city of Kenosha, on or prior to the date of the
service of said notice upon plaintiff.

"Which offers were objected to by the plaintiff as incompe-
tent, irrelevant, and immaterial, and were sustained by the
court."

The court excluded the offers from the case, to which ruling
the appellant duly excepted. Appellant also excepted to vari-
ous rulings on the admission and exclusion of evidence; to the
charge and refusal to charge; also to the refusal to submit the
questions proposed by the appellant for a special verdict as
follows:

"(1) What was the market value on March 3, 1906, of the
strip of land condemned and taken in these proceedings?

"(2) In what amount, if any, was the market value of the
real estate of the plaintiff which was not taken diminished by
the taking of the strip so condemned, in view of and consid-
ering only the uses to which such real estate was put on said
3d day of March, 1906?

"(3) Did the plaintiff, on March 3, 1906, intend to con-
struct in the immediate future any factory building or build-
ings to the westward of the spur track running from the Chi-
cago & Northwestern Railroad past the west side of his factory
buildings?

"(4) If you answer the third question in the affirmative,
then what building or buildings did the plaintiff then intend
to so build?

"(5) If you answer the third question in the affirmative, then by what amount, if any, was the market value of the real estate of the plaintiff which was not condemned and taken diminished by reason of interference by the condemnation and taking of said strip of land with the intended uses found by you in answer to the fourth question?"

The court submitted and the jury returned the following special verdict:

"(1) What was the fair market value, on March 3, 1906, of the strip of land condemned and taken for defendant's use, considering said strip as a part of plaintiff's entire tract and premises as used in his business in question? A. Twenty-five thousand ($25,000).

"(2) In what amount was the fair market value of the remainder of plaintiff's premises in question not so taken depreciated March 3, 1906, by the taking of the strip so condemned? A. One hundred thousand ($100,000)."

Judgment was rendered upon the verdict in favor of the respondents, from which this appeal was taken.

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and a supplemental brief signed also by *Miller, Mack & Fairchild,* of counsel and representing the United Surety Company; and oral argument by *T. W. Spence, George Lines,* and *W. C. Quarles.* They contended, *inter alia,* that the court erred in excluding from the consideration of the jury the stipulations and offers made by appellant as to crossings. Sec. 1810, Stats. (1898); *Manitowoc C. P. Co. v. M., G. B. & N. W. R. Co.* 135 Wis. 94, 115 N. W. 390. The court erred in excluding from the consideration of the jury the stipulations and offers made by appellant as to bridges, conduits, and rights over and under the right of way. A railroad is not compelled to assert its full power of condemnation, but may, within reasonable limits, take a less estate than that authorized by law to be taken. *Thompson v. M. & St. P. R. Co.* 27 Wis. 93, 96; *Oregon R. & N. Co. v. Owsley,* 3 Wash. Terr. 38; *McGregor v. Equitable G. Co.* 139

Pa. St. 230, 237; *Marsh v. Milwaukee L., H. & T. Co.* 134 Wis. 384, 114 N. W. 804; *Jones v. E. & W. V. R. Co.* 169 Pa. St. 333, 32 Atl. 535; *Tyler v. Hudson,* 147 Mass. 609; *Sixth Ave. R. Co. v. Kerr,* 72 N. Y. 330, 26 L. R. A. 751, and cases. The trial of the appeal in circuit court is a trial *de novo. Wooster v. S. R. V. R. Co.* 57 Wis. 311. Amendments to the petition may be permitted upon the appeal as well as before the original award. 2 Lewis, Em. Dom. § 361; *St. Louis, K. & N. W. R. Co. v. Clark,* 121 Mo. 169, 26 L. R. A. 751, and note; *Indiana, I. & I. R. Co. v. Rinehart,* 14 Ind. App. 587, 43 N. E. 238; *Young v. Laconia,* 59 N. H. 534; *Robinson v. Pa. R. Co.* 174 Pa. St. 199, 34 Atl. 546; *Russell v. Turner,* 62 Me. 496; *Murray Hill L. Co. v. Milwaukee L., H. & T. Co.* 126 Wis. 14, 22. Defendant's offers reserving rights and privileges to plaintiff were in effect an amendment to the petition in condemnation by which a less estate than formerly was sought to be condemned. Whether such stipulations be considered in the nature of amendments or otherwise, they seem to have received the express sanction of this court in *Manitowoc C. P. Co. v. M., G. B. & N. W. R. Co.* 135 Wis. 94, 115 N. W. 390. See, also, *Prather v. C. S. R. Co.* 221 Ill. 190, 77 N. E. 430; *State ex rel. Kent L. Co. v. Superior Court,* 46 Wash. 516, 90 Pac. 663; *Indiana, I. & I. R. Co. v. Rinehart,* 14 Ind. App. 587, 43 N. E. 238; *Chicago & G. S. R. Co. v. Jones,* 103 Ind. 386, 390; *Seattle & M. R. Co. v. Roeder,* 30 Wash. 244, 70 Pac. 498, 504.

*James Cavanaugh* and *Thomas M. Kearney,* for the respondents.

The following opinion was filed February 16, 1909:

KERWIN, J. The commissioners awarded damages for the entire property described in the petition, and the appeal was from the award, neither party appealing from the order determining that it was necessary to take the whole of the land described. The appellant paid into court, in conformity with

the statute, the amount of the award, and entered into posses-
sion of the property taken.    The filing of the award and pay-
ment of the money vested the title and exclusive use of the
premises in the appellant, subject to the amount of the award
being increased.  *Murray Hill L. Co. v. Milwaukee L., H. &
T. Co.* 126 Wis. 14, 104 N. W. 1003, and cases there cited.
The condemnation of the land as to the quantity and interest
taken became fixed by the order on the hearing of the petition,
and the filing of the award, payment of the amount awarded,
and taking possession fixed the rights of the parties arising
from the taking under the right of eminent domain.    The
appellant could not, on appeal from the award, elect to take
a lesser estate or different interest than that taken below, and
which it possessed itself of by compliance with the statute
and taking possession.    *Sprague v. N. P. R. Co.* 122 Wis.
509, 100 N. W. 842; *Schermeely v. S. & St. P. R. Co.* 16
Minn. 506; *Peoria, P. & J. R. Co. v. Black,* 58 Ill. 33; *Bab-
cock v. C. & N. W. R. Co.* 107 Wis. 280, 83 N. W. 316.    The
land of the plaintiff having been taken by hostile proceedings
in condemnation, he was entitled to compensation for the land
actually taken as well as compensation for the damages to the
other land, under the statutes giving the remedy.    *Bigelow v.
West Wis. R. Co.* 27 Wis. 478; *McCord v. Sylvester,* 32
Wis. 451; *Hill v. M. & H. R. Co.* 5 Denio, 206; *C., S. F. &
C. R. Co. v. McGrew,* 104 Mo. 282, 15 S. W. 931; *McArthur
v. Kelly,* 5 Ohio, 139; *Toledo, A. A. & N. M. R. Co. v. Mun-
son,* 57 Mich. 42, 23 N. W. 455; *Chesapeake & O. R. Co. v.
Patton,* 5 W. Va. 234; *Roanoke City v. Berkowitz,* 80 Va.
616; *Hibernia U. R. Co. v. De Camp,* 47 N. J. Law, 518, 4
Atl. 318; *Leeds v. C. & A. R. Co.* 53 N. J. Law, 229, 23 Atl.
168; *Leader v. Multnomah Co.* 23 Oreg. 213, 31 Pac. 481;
*In re Eastern Wis. R. & L. Co.* 127 Wis. 641, 107 N. W.
496.    The power to take is statutory, and under our consti-
tution and statutes the appellant had the right to acquire the
exclusive use of the land in question.    It did so, and whether

it could have taken a less interest, and whether such interest would have been sufficient for the public use described, we need not consider. The court below, upon the hearing for condemnation, determined and adjudged that it was necessary to acquire the exclusive use of the premises described in the petition, and that determination must be held conclusive on appeal from the award. This doctrine is well supported by authority, and rests upon the rule that, after the property has been condemned and the title acquired under the award, it cannot be surrendered, in whole or in part, upon an appeal from the award, without the consent of the landowner. In *Hill v. M. & H. R. Co.* 5 Denio, 209, the court said:

"The object in reserving an easement to the original owners of this land must have been to procure its valuation at a reduced sum and thus save expense to the corporation. All this was very proper to be adjusted by the parties, and might be mutually advantageous to them, but I do not see that the statute authorizes land to be taken compulsorily on any such terms or conditions."

In addition to the cases heretofore cited we call attention to the following: *Charnley v. Shawano W. P. & R. I. Co.* 109 Wis. 563, 85 N. W. 507; *Crook v. First Nat. Bank,* 83 Wis. 31, 52 N. W. 1131; *Clausen v. Head,* 110 Wis. 405, 85 N. W. 1028; *Babcock v. C. & N. W. R. Co.* 107 Wis. 280, 83 N. W. 316.

The main contention of appellant here is that the offers made were not by way of tendering back any of the land or interest therein taken, but for the purpose of mitigating damages. But it seems plain that if the corporation taking could, after it had taken the exclusive use and gotten possession of it under condemnation proceedings, tender back rights, easements, uses, or conveniences in lieu of damages or value, it would be indirectly, if not directly, permitted to evade payment in the manner which the constitution and statutes require. So we arrive at the conclusion that the only crossings which could be considered upon the trial below were

those contemplated by the statutes, known as "farm cross-
ings." The question, therefore, arises whether the subway
offered was a "farm crossing" within the meaning of the
statute. It is claimed by appellant, chiefly upon the author-
ity of *Manitowoc C. P. Co. v. M., G. B. & N. W. R. Co.* 135
Wis. 94, 115 N. W. 390, that it was. But the facts in the
above case were very different from the facts in the instant
case. In view of the physical conditions in the *Manitowoc
Case* above mentioned, the subway crossing was the only prac-
tical crossing or convenient one which could be given, or at
least it was a practical and convenient one and the one calcu-
lated to carry out the object of the parties. The track of the
railway company was built on an embankment, and the situ-
ation of the property and necessities of the Manitowoc Clay
Product Company such that any other than a subcrossing
would probably not be suitable or convenient. The principal
controversy was whether the Manitowoc Clay Product Com-
pany was entitled to a farm crossing, and the question was as
to amount of damages with and without the crossing. The
railway company insisted that the term "farm crossing" as
used in the statute was not confined to agricultural land, but
applied in all cases where tracts of land were divided by the
railroad right of way and it was necessary for the owner to
pass from one tract to the other in the proper use and occupa-
tion of his property. Some language in the opinion seems to
support, in a measure, the claim of the appellant regarding
the right of the railway company to tender conveniences irre-
spective of the statutory crossing, but such was *dicta* not nec-
essary to the decision of the case, and the opinion turned
upon the right to a "farm crossing" under the statute, and
that the subcrossing was a suitable and convenient one. So
we are of the opinion that in the instant case the appellant
was entitled to tender a subcrossing, and, if it could show
that it would be suitable and convenient, be allowed to con-
struct and maintain it in mitigation of damages, but such

construction and maintenance must be upon the lands taken, or those taken and other lands of the appellant, and without interference with other land or property of plaintiff. This would seem, from the record before us, difficult, if not impossible, to do, but we do not feel that the appellant should be foreclosed from showing, if it can, that suitable and convenient crossings may be constructed at grade or otherwise. Of course the appellant must show that it is able to construct and maintain such suitable and convenient crossings as are contemplated by the statute; and, as before observed, the crossings need not necessarily be confined to grade, if, otherwise constructed and maintained, they be suitable and convenient; but there is no authority of law for the taking of any property of plaintiff against his will, in the construction and maintenance of any of the rights, easements, or conveniences offered, other than the property taken by the order of condemnation on the original hearing, and which order is not here for review. The offers to construct and maintain a bell or signal, conduit, and bridges were properly ruled out because there is no authority for such construction against the will of the plaintiff. What has been heretofore said is sufficient upon this point.

Counsel for appellant favors us with some authorities which appear to hold a different doctrine, and at least lean to the idea that rights and privileges may be tendered by the corporation taking in mitigation of damages. But in so far as those cases are out of harmony with the rule laid down in this opinion we cannot follow them. We think the policy of this court thus far has been to hold to the contrary, as shown by the cases heretofore cited, namely, that after the land of the owner is condemned the compensation must be made for the damages, and only in the way pointed out by the statutes. In *Sprague v. N. P. R. Co.* 122 Wis. 509, 100 N. W. 842, this court held that after the award the railway company could not discontinue because under the award title vested in the

company. If the company cannot dismiss as to the whole of the land taken because of the vesting of title, why as to part? The transferring to the owner of rights, easements, and privileges out of the land taken in effect is turning back part of the property taken in mitigation of damages. In *Sprague v. N. P. R. Co., supra,* Mr. Justice SIEBECKER, speaking for the court, said:

"It is the policy of the state, as evidenced by the statute, to give railroad corporations extensive powers for acquiring real estate for corporate uses, but such powers should be exercised in good faith, on occasions when the interests of the public and of the corporations are to be promoted by it. It is upon these considerations that the right is granted to these corporations of taking all necessary real estate at its fair market value, regardless of the wishes of the owner, who must yield to the necessities of the public undertaking. If the right is asserted and established by the condemnation, and prosecuted to the point of ascertaining the amount of the award, and the railroad company is permitted to elect to abandon the proceeding or not after such award, upon the ground that it cannot secure the property at its own price, it might readily transpire that the owners would be subjected to many hardships, and their rights might be seriously interfered with. We must hold that the proceeding cannot be dismissed after the commissioners' report has been filed with the clerk of the circuit court."

Other authorities supporting the conclusion arrived at are 15 Cyc. 783; *Petition of N. Y., L. & W. R. Co.* 49 Hun, 539, 2 N. Y. Supp. 478; *Old Colony R. Co. v. Miller,* 125 Mass. 1; 2 Lewis, Em. Dom. (2d ed.) § 505; *Roanoke City v. Berkowitz,* 80 Va. 616; *Oregon S. L. R. Co. v. Fox,* 28 Utah, 311, 78 Pac. 800; *Van Horne's Lessee v. Dorrance,* 2 Dall. 304.

It is claimed that the court erred in refusing to receive an option held by appellant for the purchase of a tract of land west of the plaintiff's plant for $2,327 from the Bain estate. The condemned strip having taken a part off the side of the

plaintiff's tract, leaving him with an imperfect testing track and no land of his own suitable for extension, it was proposed by the tender of the option to show that a sufficient quantity of land was embraced within the option at the amount named.  The obvious purpose of this offer was in mitigation of damages.  The fact that other lands in the immediate vicinity could be purchased from a third party at a reasonable price, to which plaintiff should shift his business, could not be shown to reduce the damages to which plaintiff was entitled.  It is not material that he could move part of his plant to other land for the purpose of giving the appellant a right of way, and thus, in effect, swap land for the accommodation of appellant.  What has been heretofore said applies here as to the tender in mitigation of damages, which it was obviously offered for.  The only relevancy such an offer could have, if admissible for any purpose, would be as tending to prove the value of land in the immediate vicinity of the plaintiff's plant on the question of value of the land taken and damages to other land.  But the offer was not competent on the question of value of the land embraced in the option.  The option offered was not supported by any sworn testimony, and therefore the statements therein were not evidence of value of the land described therein.  2 Lewis, Em. Dom. (2d ed.) §§ 446–448; *Watson v. M. & M. R. Co.* 57 Wis. 332, 15 N. W. 468; *Seefeld v. C., M. & St. P. R. Co.* 67 Wis. 96, 29 N. W. 904; *Esch v. C., M. & St. P. R. Co.* 72 Wis. 229, 39 N. W. 129; *Montclair R. Co. v. Benson,* 36 N. J. Law, 557; *Winnisimmet Co. v. Grueby,* 111 Mass. 543.  Moreover, the contents of the option were not made known, except by a general statement.  The option was not offered formally, so that counsel could examine it, so far as we can discover from the record.  Nor does it appear that the option was in force when the offer was made.  It is very obvious that it would be a dangerous rule to allow an adverse party, for the purpose of establishing the value of land, to

put in evidence a writing purporting to be an option to sell at a named price, without any other proof verifying the facts stated in the option. This would, in effect, be to allow the appellant to make proof by declarations of third parties not under oath. The offer made to assign the option to the plaintiff had no materiality, because, as we have seen, appellant could not transfer interest or rights in lands in mitigation of damages, and it was not competent on the question of value of the land therein described or in the vicinity. *Seefeld v. C., M. & St. P. R. Co.* 67 Wis. 96; 29 N. W. 904; *Montclair R. Co. v. Benson,* 36 N. J. Law, 557; *Esch v. C., M. & St. P. R. Co.* 72 Wis. 229, 39 N. W. 129.

There is another class of errors which may, we think, be conveniently treated together, because they go to the question of amount of damages and whether excessive. As will be seen from the statement of facts, the appellant requested that certain questions be submitted in the special verdict, which were refused, and the court submitted as the verdict two questions. It is difficult to see how the jury could have answered these questions as they did without duplicating the damages. Had the court submitted the questions asked by the appellant the verdict would not be open to objection of duplicity. The first question proposed simply asked for an answer as to market value of the land taken March 3, 1906, and the second as to how much the market value of the remaining land of plaintiff was diminished by the taking of the strip, considering the uses to which such land was put on March 3, 1906. It is plain that any answer to these questions could not result in duplicating damages. But how about the questions submitted? In the first the jury were asked to find the fair market value on March 3, 1906, "considering said strip as a part of plaintiff's entire tract and premises as used in his business in question." And in the second question they were asked to find the fair market value of the remainder of the plaintiff's premises not so taken de-

preciated March 3, 1906, by the taking of the strip so condemned. Now the plaintiff was entitled to recover the fair market value of the strip taken and the damages to the other land occasioned by the taking; but when they found in the first question the value of the strip taken, considering it as a part of the plaintiff's entire tract and premises as used in his business, they necessarily found, not only the value of the strip taken, but some damage to the remaining premises. The value of the strip, considering its use in connection with the balance of the land as used in the plaintiff's business, necessarily involved the idea of damage to the remainder of the plant. The jury by the first question of the special verdict was required to find, not alone the value of the strip taken, but its value as part of the plaintiff's entire tract and premises as used in his business. This was quite a different thing than finding the value of the strip as a part of the whole tract of land of which it was a part, considering its natural advantages arising out of its location and situation. Its value as a part of the entire premises as used in the plaintiff's business must include deterioration in whole or in part of the remainder of the plant, because this is its value when considered as a part of the entire premises as such premises were being used when the strip was severed. The value of the strip as used in the plaintiff's business would necessarily be regarded by the jury as including a part of the damage which the whole plant would sustain by the severance of the strip. A strip of land taken out of a manufacturing plant might be of great value when considered as a part of the premises as used in the business, while aside from its use in the business it might be of very small value. So the idea of value of the strip for such use included an element of damage to the premises and business. Suppose the plaintiff was forced to purchase a small strip of land adjacent to his plant and necessary to have in order to successfully operate his plant. The value of such strip to him for use in connection with his business

would far exceed the market value or the value to others, and by the addition of the strip his plant would be increased in value far beyond the reasonable market value of the strip. So in the first question, when the value of the utility of the strip in connection with the plaintiff's business was included in the damages, some portion of the damage to the whole premises was included. We think the jury, in answering the first question intelligently, would necessarily include damage to the remainder of the premises. Had the second question of the special verdict been framed so as to exclude any damage above the value of the land taken, the situation would be different. But it was not. On the contrary, the second question called upon the jury to award all damages for depreciation caused by the taking of the strip. In this situation duplication of damages seems inevitable. If the verdict had confined the jury to finding the market value of the strip taken as a part of the tract, and not as part of the tract "considering said strip as part of the plaintiff's entire tract and premises as used in his business," it perhaps would not have been subject to criticism under the rule laid down in *Washburn v. M. & L. W. R. Co.* 59 Wis. 364, 375, 18 N. W. 328; *Watson v. M. & M. R. Co.* 57 Wis. 332, 15 N. W. 468; *Esch v. C., M. & St. P. R. Co.* 72 Wis. 229, 39 N. W. 129, and other cases in this court.

Moreover, in connection with the form of the verdict, certain evidence admitted under objection was well calculated to unduly enhance damages. Witnesses were permitted, against appellant's objection, to answer questions respecting the value of the land taken, "considered as an integral part of the entire plant and property," and the value of the strip taken "as a part of the entire plant and manufacturing site belonging to the plaintiff, including the machinery and fixtures, considering the plant as an entirety, and including fixed machinery and fixtures." These, and other similar questions permitted to be answered as to the value of the strip

taken and damages to the remaining land, in connection with the special verdict, made a case which necessarily resulted in duplication of damages, and was not cured by the charge.

The findings of the jury also clearly show, when viewed in the light of the evidence, that it did in fact include in the value of the strip taken damages to the other land. The quantity of land taken was about 2.3 acres, and the witnesses under the form of questions asked put the value at from $35,000 to $60,000, the jury finding the value of the strip taken under the first question of the special verdict, $25,000; yet the evidence establishes that the strip taken, disconnected from the balance of the plant and business, would not exceed one tenth of the award allowed by the jury for it. The strip taken was not occupied by any buildings, except a foundation constructed shortly before the petition for condemnation was filed. It was situated between the main plant and the testing track, and took a small portion of the testing track. So it is plain that the jury, in awarding damages for the strip taken, included in such award a portion of the damages included in the award of damages to the remainder of the land and premises, and yet under the second question they were required to award all damages done the remaining premises.

At the time the condemnation proceedings were commenced there was an easement for railway purposes between the plaintiff's testing track and the balance of the land, and a part of the strip taken lapped over upon this easement or right of way, which is known in this case as the Newell-Hoyt easement, and this easement separated the main part of the plaintiff's plant from the testing track and therefore was an important consideration on the question of damages to the balance of the plant not taken. Upon this point the appellant requested the court to instruct the jury as follows:

"You are instructed that on the 3d day of March, 1906, a right of way, or easement, as it is called, belonged to Mrs. Newell and Mrs. Hoyt, to build and maintain a track, or

tracks, across the premises of plaintiff upon a strip of land twenty feet wide, the center of which strip was 341.9 feet west of the west line of Charles street, and which ran north and south through said premises in a straight line after leaving the end of the curve in the spur tracks shown on the map, marked 'Plaintiff's Exhibit E,' and to cause to be transported property in cars along such tracks. The right of the owners of this easement so to occupy and use said strip was paramount to any right of the plaintiff to cross such strip or to use the surface thereof for any purpose whatever."

This instruction was calculated to bring to the attention of the jury the fact that along the condemned strip there existed an easement which necessitated the keeping of this strip open and unobstructed for the passage of cars. The fact that this easement existed should have been submitted to the jury upon the question of damages. The court not only refused to give the instruction requested respecting the Newell-Hoyt easement, but sent the case to the jury upon the theory, so far as we can discover from the record, that no such easement existed. This we think was error. Whether the strip taken by appellant cut the plaintiff's land so as to separate the main part from the testing track, or whether an easement existed at the time condemnation proceedings were commenced which would in whole or in part have the same effect, was a most important consideration for the jury. The easement secured the right to Mrs. Newell and Mrs. Hoyt as well as to plaintiff to use this strip of land for the passage of cars. The request to charge to the effect that they had a paramount right to this strip was not technically correct, because the proof shows that the use by them was in common with the plaintiff, there being mutual covenants in the deeds between the parties for use by each. But some instruction along the line asked should have been given. The importance of some instruction on the subject is intensified by the proof admitted. For example, evidence was admitted, over objection and exception, of the value per square foot of the plant, and the idea of ex-

tension of the business made to appear to be a prominent
factor in the value of the plant and property taken, as well as
damages; also as to the value of the strip taken "considered
as an integral part of the entire plant and property," and
"considered as a part of the entire plant and premises occu-
pied by *Jeffery,* including fixed machinery and fixtures."
This and other evidence was admitted, which, when taken in
connection with the verdict, was well calculated to tie the
jury down to a wrong rule of damages.    No error was com-
mitted in refusing to charge that the plaintiff's plant con-
sisted of two tracts, but the jury should have been instructed
as to the existing easement extending through it, over a part
of which the strip condemned lapped, to the end that the jury
might have full knowledge of the obstructions in the way of
extending buildings over this strip, regardless of the appel-
lant's right of way.    *Tobey v. Taunton,* 119 Mass. 404;
*Miller v. Newark,* 35 N. J. Law, 460.

Since there must be a new trial we have referred only in
a general way to many of the alleged errors in so far as may
be helpful to the court below on another trial, without intend-
ing to cover in detail all points raised in the record.

It is also claimed that the damages are excessive.    The
duplication of damages arising from the manner in which the
case was presented to the jury, including the form of the ver-
dict, doubtless accounts for the size of the verdict.    Whether
we would set the verdict aside as excessive if the case had
been properly presented and no error appearing in the record
we need not determine, since the judgment must be reversed
upon other and more obvious grounds.

*By the Court.*—The judgment of the circuit court is re-
versed, and the action remanded for a new trial.

The following opinion was filed March 3, 1909:

MARSHALL, J. (*concurring*).    In my opinion the final re-
sult of the appeal is right, but the ground upon which it is

decided that the damages assessed are excessive is out of harmony with the statute, with the practice under it, and with the decisions of this court.

Sec. 1848, Stats. (1898), provides that in a case of this kind the commissioners shall appraise . . .

(1) the value of each . . . parcel of land proposed to be taken with the improvements thereon; and

(2) the damages sustained by the owner by reason of the taking thereof, and that they shall

(3) not make any allowance or deduction on account of any real or supposed benefits to the proprietor from the construction of the road, but

(4) special benefits to real estate "adjoining that taken" shall be allowed in deduction of any damages . . . to such adjoining real estate.

The value of land taken is required to be fixed with reference to the market value for any purpose to which it may be adapted so far as appears presently to affect such value. *Washburn v. M. & L. W. R. Co.* 59 Wis. 364, 373, 18 N. W. 328. That includes adaptability to be platted into lots to be sold for building purposes, the use to which it is intended to be applied, and every use for which it is adaptable, present or future, enhancing the present value. *Watson v. M. & M. R. Co.* 57 Wis. 332, 356, 15 N. W. 468; *Meinzer v. Racine,* 74 Wis. 166, 169, 42 N. W. 230.

The amount to which the landowner is entitled on account of the land taken is its fair market value for any purpose for which it may reasonably be used presently or in time so near as to appreciably affect such value. *Watson v. M. & M. R. Co., supra,* p. 356, 15 N. W. 479.

In the whole, the landowner is entitled to be made as good, by payment of money, as if his property were not disturbed by the railroad enterprise, not considering benefits or damages caused by the building of the road disassociated from physical disturbance of the property, except by offsetting special benefits to land not taken against damage to such land.

He is entitled to "the difference between the fair market value of the whole property before the taking and the fair market value of what" remains "after the taking." *Watson v. M.. & M. R. Co., supra,* p. 354, 15 N. W. 478.

As regards the value of the land taken in a case of this kind, such value is "the market value of the strip taken, at the time it was taken, as a part and parcel of the lot of which it formed a part." The jury were so instructed in *Esch v. C., M. & St. P. R. Co.* 72 Wis. 229, 39 N. W. 129, and the charge was in all respects approved. The court said:

"When the jury, in obedience to the instructions given, assessed the value of the strip taken as a part of the whole lot, and as a parcel of the same, and determined the damage suffered by the plaintiff by reason of the taking to the balance of the lot not taken, these two amounts, added, would give the plaintiff's compensation precisely as the rule was laid down by the trial court in the *Watson Case* [57 Wis. 357, 15 N. W. 468], which was approved by this court."

The court submitted to the jury two questions: First. "What was the market value of the strip taken at the time of the taking . . . considered as a part and parcel of the lot of which it was a part?" Second. "What was the damage to the market value of the residue of the lot" at the time of the taking?

In *Barker v. M. & L. W. R. Co.* 59 Wis. 364, 18 N. W. 328, decided with *Washburn v. M. & L. W. R. Co., supra,* the trial court refused to admit evidence of the value of the strip taken as a part of the whole lot, holding that the value of the strip was to be ascertained without reference to the balance of the lot, the same as though some other person owned it. For that reason the landowner prevailed on the appeal. 59 Wis. 375, 18 N. W. 333. In disposing of the matter the court said:

"It was argued that unless the rule of the circuit court be adopted, the enhanced value of the part taken, if considered as a part of the lot, may be assessed as damages for depre-

ciation in the value of the portion of the lot not taken.   The
danger of a double assessment can, we think, be readily
averted by a proper instruction in that behalf.   It is a sub-
stantial right of the plaintiff to recover directly the full value
of the land taken, because there can be no diminution there-
from on account of benefits.   Whereas, if such value is in-
cluded in the assessment for the depreciation of the value of
the balance of the lot resulting from such taking, the whole
amount thereof is liable to be absorbed by an assessment for
benefits."

So it will be seen that in the *Watson Case* and the *Esch
Case* the court approved submission to the jury of the case to
find, first, what was the market value of the strip of land
taken, at the time it was taken, as a part and parcel of the
whole lot of which it was a part; second, what was the damage
to the market value of the residue of the lot, in consequence
of such strip being taken; and in the *Washburn Case,* because
the court refused to submit the first feature in the form indi-
cated the result was reversed.   Now let us see how the de-
cision here stands with reference to that situation.

The court submitted to the jury to find, first, What was
the fair market value on March 3, 1906, of the strip of land
condemned and taken for defendant's use, considering said
strip as a part of plaintiff's entire tract and premises as used
in his business in question?

That for short is this: What was the fair market value on
March 3, 1906, of the strip of land taken considered as a
part of the whole tract of which it formed a part?   Now it
seems no one could read that question and the decisions to
which I have referred, without seeing clearly that the learned
trial judge either had the decisions before him when the ques-
tion was drafted or had that clearly in mind.   The form fol-
lows what was there approved as necessary with strict accu-
racy.

The next question is this: "In what amount was the fair
market value of the remainder of plaintiff's premises in

question, not so taken, depreciated March 3, 1906, by the taking of the strip so condemned?"

What we have said as to the first question may be regarded as repeated as to the second. Court and counsel evidently relied, as well they might, on decisions of this court setting the matter at rest a quarter of a century ago, which has never since been cast into doubt in the slightest particular.

This court now says, "It is difficult to see how the jury could have answered these questions as they did without duplicating damages." Is that not just the opposite from what this court said, speaking by LYON, J., in the *Washburn Case* we have quoted from? Again the court says, "Had the court submitted the questions asked by appellant the verdict would not be open to objection of duplicity." Turning to the questions referred to, I find the first to be: "What was the market value on March 3, 1906, of the strip of land condemned and taken in these proceedings?" omitting: considered as a part of the whole lot from which it was taken; the very defect which worked a reversal in the *Washburn Case* and was said to be out of harmony with the previous case (*Watson v. M. & M. R. Co.* 57 Wis. 332), as it evidently is with the subsequent case of *Esch v. C., M. & St. P. R. Co.* 72 Wis. 229. The second question as the court approvingly states it is this: "In what amount, if any, was the market value of the real estate of the plaintiff which was not taken diminished by the taking of the strip so condemned in view of and considering only the uses to which such real estate was put on said 3d day of March, 1906?" Thus confining the value to the particular use characterizing the land at the time of the taking, excluding future uses that might enhance the value, directly contrary to all the cases we have cited and the universal current of authority in this and other courts; excluding elements essential, as this court has said, to afford the landowner that full and just compensation to which he is entitled under the constitution.

Thus the verdict which appellant unsuccessfully requested, as to both questions, and which the court approves as the form necessary to prevent duplicity, has been, heretofore, as unquestionably condemned, as has the verdict actually submitted now condemned been, heretofore, unquestionably approved. I cannot see the situation different than this, and regard it as most unfortunate. I trust I have not exaggerated it. I have endeavored to make it as plain as possible to the end that I may not share the responsibility of the error, if there be one, and that I may do what I can to secure a return to what I deem to be the correct rule.

I note that this court, very guardedly, suggests that if the first question submitted had omitted the words "as used in his business in question," perhaps it would not have been subject to criticism under the rule laid down in the cases to which I have referred, thus, seemingly, not intending to invade such rule, but suggests that a question drafted in exact accord with it might not be subject to criticism, and at the same time proclaims that a question submitted and rejected, omitting the element expressly required by such rule, should have been submitted. The words "as used in his business" were in exact conformity to the rule that the present use of the strip in common with the whole of which it forms a part as well as any use, prospective, affecting the value, are proper elements of value.

True, as suggested by Justice Lyon in the *Washburn Case,* there is danger of a duplication of damage in such a case, but as the court said, "The danger . . . can be readily avoided by proper instructions in that behalf."

It was there held that questions of the full scope submitted here, were essential to protection of constitutional rights and that the danger of one overlapping the other was to be obviated by instructions.

The learned trial court had this court's suggestion last referred to clearly in mind. The jury were carefully in-

structed as to the "fair market value." They were instructed that the value of the strip was to be determined with reference to the value of the whole of which it formed a part. They were told:

"In determining the value of. the strip taken you will be careful not to confound such value with any damages, if any, to the remainder of the premises occasioned by such taking; and in determining the damages, if any, to the remainder of the premises not taken you must not include any valuation fixed by you of the strip taken. The two elements of damage are separate and distinct from each other."

What more could one ask? An examination of the briefs and cases heretofore submitted in cases, fails to disclose an instance where danger of duplication of damages was more carefully guarded against by the verdict and the charge than in this case. I think the submission in that regard was faultless.

Notwithstanding the distinguished correctness of the submission, I am satisfied from the size of the verdict and the evidence that the jury either failed to profit by the court's careful admonishment as to duplication of damages, or plainly disregarded the evidence. The evidence of the witnesses upon which the jury grounded its finding, plainly duplicated the damage. The opposing evidence did not. That is the explanation of the difference being so great as not to be attributable to mere difference in judgment applied from a common standpoint. I will not take time to go into the evidence. It is sufficient to thus state my conclusion.