MANITOWOC CLAY PRODUCT COMPANY, Appellant, vs. MANITOWOC, GREEN BAY & NORTHWESTERN RAILWAY COMPANY, Respondent.

SAME, Respondent, vs. SAME, Appellant.

*February 21—March 10, 1908.*

*Railroads: Farm crossings: Eminent domain: Right of way: Statute: Construction: Statute adopted from other state: Lessor: Compliance with reservation: Question for jury: Judgment: Immaterial irregularity: Waiver of appeal: Statement by counsel: Stay of proceedings.*

1. In a condemnation proceeding the defendant railway company acquired a right of way through plaintiff's land, thereby separating it into two nearly equal parts, on one of which was located plaintiff's brick factory, and on the other the clay used in such factory. Without a suitable crossing plaintiff would be cut off from access to a larger portion of the clay land, which it could only use profitably in connection with its manufactur-

ing plant. The railway company, in compliance with sec. 1810, Stats. (1898), tendered a conveyance of a suitable crossing, which plaintiff refused. *Held* that, as the railway company was bound by statute to provide a suitable crossing, the plaintiff was bound to accept such crossing in reduction of the damages sustained by reason of the taking of the right of way, and that the damages must be assessed with reference to the condition of the land with such crossing.

2. Even in the absence of a statute imposing a duty to provide a suitable crossing, the court in the proper exercise of its equitable power in condemnation proceedings may have the damages assessed with respect to the condition of the property with such crossing.

3. The right to a "farm crossing" under sec. 1810, Stats. (1898), is not to be limited to adjoining lands used solely for agricultural purposes, but extends to such crossings as are necessary to enable owners having land abutting on either or both sides of the road to reach and work their properties, the word "farm" being descriptive of the crossing and not of the lands adjoining.

4. Where a statute adopted from another state had previously received an interpretation by the courts of that state, it should have the same interpretation here.

5. Where the lessor of clay land used for brick making reserved the right to resume any portion of the leased premises on furnishing to the lessee an equal area of other clay land, whether the substituted land complied with the provisions of the reservation was properly submitted to the jury.

6. In a condemnation proceeding by a railway company to acquire a right of way which divided plaintiff's land, a judgment was awarded for the value of the land taken and damages sustained to the remaining land without a suitable crossing, with a provision that upon payment of a sum equal to the value of the land taken and furnishing a proper crossing the remainder of the judgment should be perpetually stayed. *Held*, that the judgment, although irregular in form, was in substantial conformity to defendant's offer on the trial, and the irregularity was immaterial both on principle and by force of sec. 2829, Stats. (1898).

7. Pending an appeal by both parties from such judgment, the time within which defendant is required to perform the conditions specified must be considered as stayed.

8. On an appeal by both parties from a judgment, a statement by counsel for one appellant, that he was willing to accept the judgment as entered, was not regarded as an express abandonment of the appeal.

Manitowoc C. P. Co. v. Manitowoc, G. B. & N. W. R. Co. 135 Wis. 94.

APPEALS from a judgment of the circuit court for Manito-woc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed on both appeals.*

This is an appeal and cross-appeal from a judgment entered in condemnation proceedings begun by the defendant in the circuit court for Manitowoc county. From the award of the commissioners both parties appealed, and the appeals were consolidated for the purpose of trial. At the time of the commencement of the condemnation proceedings the plaintiff was in possession of the premises, containing about fourteen acres, under a written contract with the Wisconsin Central Railway Company and the Manitowoc Land Improvement Company, the latter being a holding company for the former. For brevity this contract will be called a lease, and the Wisconsin Central Railway Company the lessor. The plaintiff thereby acquired the land for a term of years for the purpose of manufacturing brick from the clay found upon the premises. It erected a plant on the land valued at about $30,000, and was engaged in the manufacture of large quantities of brick. The land was bounded on the east by the Manitowoc river, on the north, northwest, and west by the tracks of the Wisconsin Central Railway Company, and on the south by private property. The right of way acquired by the defendant was a strip 100 feet wide running north and south across plaintiff's premises and separating them into nearly equal parts, the manufacturing plant being on the east side thereof and the larger portion of the brick clay on the west. The plaintiff obtained the clay from the breast of a cut about twenty feet deep in which the Wisconsin Central Railway was constructed. The clay was hauled to the manufacturing plant on tram-cars across the land condemned for a right of way. The defendant's railroad was built upon the top of the bank and crossed the Wisconsin Central Railway about twenty-five feet above the tracks at the place of crossing. Without a suitable crossing over or under the de-

fendant's right of way the plaintiff would thus be cut off from access to the larger portion of the clay land, which it could only use profitably in connection with this manufacturing plant.

Upon the trial the defendant tendered the plaintiff a conveyance of a crossing or subway, which the plaintiff rejected, claiming the right to recover damages in view of the separation of the premises without any crossing. The tender was admitted and also testimony showing the damages arising from taking the plaintiff's property with the crossing and the amount without the crossing. A special verdict was submitted for the assessment of damages on each of these grounds. The verdict fixed the plaintiff's damages at $66,900 if the plaintiff under the law or under the tender made by the defendant was not entitled to or obliged to take a suitable and convenient subway or undercrossing to connect the eastern with the western portion of its remaining premises, and fixed the plaintiff's damages at $13,800 if the plaintiff was entitled to or was obliged to take such crossing. The court adjudged that the plaintiff was bound to accept the tender of a crossing upon the trial of the case and entered judgment unconditional for $13,800, and for $53,100 conditional upon the neglect or failure of the defendant to construct a subway or undercrossing within a specified time after the plaintiff had served notice of its election to accept the tender of the crossing made by the defendant. The plaintiff on its appeal assigns as error the refusal of the court to render judgment unconditional for the sum of $66,900, and for interest thereon and costs.

The defendant appeals from the entire judgment, and a further statement is required in that connection. The defendant held the land in question under a contract which contained a clause allowing the lessor to resume possession of any portion of the premises after six months' notice upon certain conditions, which the jury found had not been com-

98    SUPREME COURT OF WISCONSIN.    [Mar.

Manitowoc C. P. Co. v. Manitowoc, G. B. & N. W. R. Co. 135 Wis. 94.

plied with.   After the defendant company had staked out
its proposed line across this land the general manager of the
plaintiff was requested by the Wisconsin Central Railway
Company to surrender the right of way to the defendant, and
after his refusal the six months' notice was given by the Wis-
consin Central Railway Company of its purpose to resume
under the lease the strip of land in question.   Within three
months thereafter and before the time had arrived to demand
possession under the terms of the lease, the Wisconsin Cen-
tral Railway Company quitclaimed this tract to the defend-
ant, who took title with full knowledge of the rights of the
parties.   After this conveyance the Wisconsin Central Rail-
way Company took no steps to meet the requirements of the
contract by offering other land in place of that taken until
about the time when the six months' period had expired.
Fourteen days prior to the expiration of the six months' pe-
riod the petition for condemnation was filed.   At that time
the manager of the defendant went to Milwaukee to ascertain
the lessor's position with respect to the condemnation pro-
ceedings, and was then informed that it would have nothing
to do with it.   On the day before the six months expired and
fourteen days after the petition for condemnation had been
filed, and after the necessity for the taking had been deter-
mined and the commissioners appointed, the defendant com-
pany by its attorney tendered to the plaintiff an instrument
executed by the officers of the lessor of an equal area of clay
land selected by said lessor in lieu of that taken for the right
of way.   The plaintiff refused to accept this offer and no
further steps were taken until the trial.   Upon the trial the
plaintiff claimed that the deed did not in fact contain an
equal area of clay land and did not therefore constitute a
compliance with the condition of resumption; whereupon a
second deed of land in lieu of that resumed was tendered to
the plaintiff and was refused as not having been made in
compliance with the contract.   The question was submitted

by the court to the jury. The jury found that the tract of land which was tendered to the plaintiff in exchange for the strip taken by the defendant for its right of way did not contain as much clay suitable for brick-making purposes as contained in the strip taken by the defendant.

At the close of the testimony the defendant moved for a direction of verdict in its favor or for nominal damages. After the verdict was returned the defendant moved to strike out the answer of the jury to the question which found that the land offered in exchange did not contain as much clay suitable for brick-making purposes as the strip taken for the right of way. Defendant also moved for judgment notwithstanding the verdict. The errors assigned by defendant relate to the rulings of the court on these motions.

For the plaintiff there were briefs by *Hougen & Brady,* attorneys, and *P. H. Martin,* of counsel, and oral argument by *Mr. A. L. Hougen* and *Mr. Martin.*

*E. M. Hyzer,* for the defendant.

BASHFORD, J. The judgment of the circuit court awards to the plaintiff as damages for taking the land by the defendant for its right of way the sum of $66,900, besides interest and costs, but further adjudges that if the defendant within a specified time furnishes the plaintiff with a crossing the collection of $53,100 of said judgment shall be perpetually stayed. It results, therefore, that if the defendant furnishes the plaintiff with a crossing and pays the plaintiff the sum of $13,800 with interest and costs, it will be discharged from further liability. The refusal of the court to render an unconditional judgment for $66,900 is the ruling complained of on plaintiff's appeal. The verdict of the jury establishes beyond controversy that the crossing provided for is practicable and that it will greatly lessen the amount of plaintiff's damages by reason of the taking of a right of way across its property for the defendant's railway. There is no con-

tention that the question was not submitted to the jury under proper instructions or that the estimate of damages is not just and reasonable.

Counsel for plaintiff stand upon the proposition that the law imposes no obligation upon the defendant to furnish a crossing upon this property and hence there is no obligation resting upon the defendant to accept a crossing in reduction of the amount of damages. Counsel for defendant asserts that the plaintiff was lawfully entitled to a crossing, and that, as in all condemnation proceedings, the award of damages must be made in view of the legal situation. In this connection it is urged upon its behalf that sec. 1810, Stats. (1898), imposes upon the defendant the duty of constructing and maintaining upon plaintiff's property a suitable and convenient crossing. If that is the proper construction of this section it is decisive of the controversy. The material part of the section is as follows:

"Every railroad corporation operating any railroad shall erect and maintain on both sides of any portion of its road (depot grounds excepted) good and sufficient fences of the height of four and a half feet, with openings or gates or bars therein, and suitable and convenient farm crossings of the road for the use of the occupants of the land adjoining, and shall construct and maintain cattle-guards at all highway crossings and connect their fences therewith to prevent cattle and other domestic animals from going on such railroad."

The railroad is here required to maintain "suitable and convenient farm crossings of the road for the use of the occupants of the lands adjoining." Did the legislature intend to require the railroad to maintain a crossing only in case the adjoining land was used for agricultural purposes at the time the right of way was acquired? This would be placing a very strict construction on a statute enacted for the protection and benefit of owners of land when compelled to surrender part of their property for the use of a railway company in the construction of its road. So far as it appears from

the record the plaintiff's land was suitable for farming purposes, and might be so used if the clay could not be profitably removed for the manufacture of brick. As farming land it is considered to be worth from $150 to $200 an acre. We are not convinced that this statute is to be construed as applying to the particular use of the land at the time of actual taking. The statute should be liberally construed to effectuate the purpose of its enactment. The words "farm crossings" are descriptive of the kinds of crossings required for the use of occupants of adjoining lands, as distinguished from highway crossings used in the same section and elsewhere in the statute, and railroad crossings, a term also used elsewhere in the statutes, and in respect to which different provisions are made as to their use and means of protection. The statute does not say "for the use of occupants of adjoining farm lands," and we cannot interpret it as having that meaning.

The view here expressed is supported by the history of this statute. It was first enacted as ch. 268, Laws of 1860, and was taken from sec. 44 of the general railroad act of New York of 1850 (ch. 140), which required the maintenance of "farm crossings for the use of the proprietors of land adjoining such railroad." Ch. 268 required "farm crossings of the road for the use of the proprietors of the lands adjoining such railroad," a provision somewhat more limited than that found in sec. 1810. That this statute was adopted from the New York act has been declared by this court in *Blair v. M. & P. du C. R. Co.* 20 Wis. 254. The supreme court of New York in 1854, in *Clarke v. R., L. & N. F. R. Co.* 18 Barb. 350, construed the language of the above statute, and held that it applied to a village lot through which a railroad right of way had been purchased, and upon which a railroad embankment had been constructed separating the lot into two parts. An action was brought to compel the railroad company to build and maintain a crossing. After declaring

that the statute was as applicable to a right of way purchased as to a right of way condemned the court said:

"Nor is this provision for making crossings in terms limited to cases where the adjoining proprietors have farms or any particular quantity of land to be benefited by the crossings, and if there is any limitation in cases within the language employed to be imposed by construction, it is merely that the crossings must be useful. In the present case I am satisfied that the defendants are under a legal obligation to make such a crossing as is intended by the statute for the use · of the plaintiff, and probably an undercrossing only would be suitable."

This interpretation had been placed upon the statute before its adoption here, and hence became a part of the law of the state. *Pomeroy v. Pomeroy,* 93 Wis. 262, 67 N. W. 430; *Milwaukee Co. v. Sheboygan,* 94 Wis. 58, 68 N. W. 387; *John V. Farwell Co. v. Wolf,* 96 Wis. 10, 70 N. W. 289, 71 N. W. 109.

Since the adoption of the New York statute by this state the court of appeals of that state has expressly held that the term "farm crossings" is not confined to farm lands, but was designed to compel railroads to construct and maintain such crossings over their lines as are necessary to enable owners having land abutting on either or both sides of the road to reach and work their properties. *Buffalo S. & C. Co. v. D., L. & W. R. Co.* 130 N. Y. 152, 29 N. E. 121. In that case before the railroad was built quarries had been opened on the farm, from which stone used in building and for cement was taken and sold, and when the road was constructed the land was used for agricultural purposes and portions of it for quarries. The railroad company insisted that it was error to receive evidence of the extent of the use or the value of the property for quarries, or to order a crossing constructed for any uses except agricultural ones. The court said:

"This statute does not limit the right of adjoining owners to crossings solely for agricultural purposes, but they may be ordered to enable owners to remove the natural products of the land, like stone and minerals."

The court there construed the statute liberally to carry out the purpose of the legislature.

As showing a different construction of the New York statute by the courts of that state, counsel for plaintiff refer to *Jones v. Seligman,* 81 N. Y. 190, and *Kerr v. W. S. R. Co.* 2 N. Y. Supp. 686. *Jones v. Seligman* was an action by the owner of a farm to compel the trustees of a railway company to maintain fences on each side of the right of way through his land and also a farm crossing under the road. The rule is there stated that the location of a crossing should be made with reference to the necessity and convenience "of the owner of the farm," which was really the only question there involved. There is nothing in the opinion to indicate that the earlier decision was to be overruled or that the term "farm crossing" was to be limited to adjoining lands used solely for agricultural purposes. *Kerr v. W. S. R. Co.* has no direct application. In that case the court held that as the plaintiff had no property along the farther side of the railroad along the Hudson river he had no right to a crossing. It is said:

"Even if the plaintiff had a dock upon which he could go after crossing the property of the railroad, it is not clear that the court would be justified in holding the *locus in quo* to constitute a farm crossing within the letter or spirit of the act. It is unnecessary, however, to pass upon that question in the case."

This court in *Caldon v. C., St. P., M. & O. R. Co.* 85 Wis. 527, 55 N. W. 955, has given a liberal construction to the provisions of sec. 1810, and strongly intimated that the right to a farm crossing was not to be limited to adjoining lands used solely for agricultural purposes. In that case the defendant's railroad track was crossed by a private logging

railroad constructed entirely upon the land of the Shell Lake Lumber Company, and owned and operated exclusively by that company in carrying on its lumber business. It appeared that the track of the defendant railroad was properly fenced and guarded, with the exception that the openings in the fence through which the logging road was laid at the crossing were not guarded by gates or bars. The plaintiff's horses went through one of these openings upon the defendant's track and were injured and the action was to recover damages for such injuries. It did not appear that the lands adjoining the railroad were used for farming purposes. Whether, therefore, gates or bars or cattle-guards should have been maintained at this crossing depended upon the construction of sec. 1810, and the court held that section to be applicable, saying:

"It is probable that the crossing in question is included in the term 'farm crossing,' as used in the statute, for the logging road is for the use of the owner and occupant of the adjoining land. A strict construction of the statute might require gates or bars to be placed in the openings made by the logging road; but because gates or bars would seriously interfere with the reasonable use of such road, and because, for the same reason, cattle-guards are allowed to be used at highway crossings instead of gates or bars, we think the statute should be construed to permit the use of cattle-guards at the crossing in question."

If this statutory requirement for crossings is to be limited solely to farming lands, then any railroad may condemn a right of way and construct its road through property used for mining or manufacturing or lumbering purposes, however large or extensive, without furnishing or permitting a crossing over the railroad from one part to the other part of the premises. Such a construction might and probably would in many instances cause great loss and hardship to the owners of valuable property, or, as in the instant case, impose an unreasonable burden upon the railroad.    We must hold,

therefore, that the word "farm" as employed in this section is descriptive of the crossing and not of the lands adjoining; that the only limitation upon the crossing is found in the words "suitable and convenient" to be applied to its location, construction, and use as bearing upon the interests of the owner of the land and of the railroad company and of the traveling public. We conclude that the obligation rested upon the defendant under this statute to maintain a suitable and convenient crossing for the plaintiff over or under its right of way, that the plaintiff was bound to accept such crossing in reduction of the damages in this action, that the question was properly submitted to the jury, and that the verdict fully supports the judgment as entered.

This disposes of the only question presented for decision upon plaintiff's appeal, and it is not necessary, therefore, to consider whether in the absence of statutory provision the judgment could be sustained as a proper exercise by the court of its equitable powers in condemnation proceedings. The affirmative view was adopted by the trial court in the opinion directing the entry of this judgment, under the impression, as there expressed, that sec. 1810 was not applicable to the situation. The learned circuit judge there says:

"I cannot believe that the law of this state is such as to compel defendant to destroy and to make compensation for plaintiff's property rights in the land not taken, when defendant seeks to preserve the same uninjured, and will be able to do so by constructing the proposed undercrossing or subway at a comparatively small expense. If the law does that, then its effect is to force defendant, against its protest, to work a great and wholly unnecessary destruction of property value, which defendant offers to preserve and is able to do so. The needless destruction of the value of property cannot be a result which the law sanctions or will seek to bring about."

This subject receives full consideration under a similar state of facts in *St. Louis, K. & N. W. R. Co. v. Clark,* 121

Mo. 169, 25 S. W. 192, 906. It was there held that a railway company in condemning a right of way may stipulate to provide for the owner of the land certain crossings and have the damages assessed with respect to the condition of the property with such crossings, although the statute does not in terms provide that the company may reserve to the landowner such an easement. The authorities upon the proposition are referred to in the notes to this case in 26 L. R. A. 751. The author of the notes says that this decision in favor of the right to take property in condemnation cases, subject to certain easements of the landowner so as to minimize his damages, is in accordance with the weight of authority. The question was considered but not decided by this court in *Thompson v. M. & St. P. R. Co.* 27 Wis. 93, and *McCord v. Sylvester*, 32 Wis. 451.

Defendant's appeal from the judgment was not expressly abandoned at the hearing, although its counsel stated that he was willing to accept the judgment as entered. We shall, however, consider the errors assigned on its behalf.

The first error assigned relates to the ruling of the court in denying defendant's motion for a directed verdict in its favor or for nominal damages. This assignment is predicated upon the theory that the lessor had rightfully resumed possession of that portion of land included in the condemnation proceedings and had conveyed the same to the defendant, and consequently the plaintiff had no right to recover damages for the taking of that portion of the premises by the defendant. The contract reserves to the lessor the power to retake possession of any portion of the leased premises on conditions therein specified, provided that it should furnish to the lessee an equal area of clay land selected by it, furnished with prescribed track facilities. Whether or not there had been a sufficient resumption depends on the construction to be given to this provision of the contract. The resumption could not become effectual without the selection

of the substituted land by the party charged with this duty, and both parties in this action from first to last have read the agreement as conferring upon the lessor the power of selection indicated. Upon this construction of the contract, as made by the parties themselves, the effort at resumption by the lessor was not effective unless the selected land complied with its provisions. This was a question of fact for the jury, and has been answered in favor of the plaintiff by the special verdict.

The second assignment of error relates to the refusal of the court to set aside the above finding of the jury. Counsel for defendant says that the tender of the selected land in lieu of that taken was made on behalf of the lessor as a performance of the condition of resumption, and insists that it was effectual for that purpose in view of the unconditional refusal by the plaintiff of the first tender made. The defendant did not maintain that attitude consistently, if it could have done so successfully, as upon the trial it made a second tender of land and submitted proof to show that the tracts offered met the requirements of the contract. It is further claimed by the same counsel that the evidence adduced on behalf of the defendant demonstrates beyond argument that the land tendered in lieu of the land resumed was a sufficient compliance with the condition of resumption. We cannot yield assent to this view. The testimony on behalf of the plaintiff strongly tended to show that the tracts so selected and tendered to it did not contain an equal area of clay land, or brick-making clay in any substantial quantities. This question of fact, supported by competent proof of either side, was properly submitted to the jury for determination upon the record as herein presented. It was not, therefore, error for the court to overrule the defendant's motion to change the finding of the jury on this subject.

The assignment of error relating to the form of the judgment cannot be sustained. The judgment is founded on the

verdict, which determines the amount of damages for the land taken and for injuries to the adjoining premises, with a suitable crossing as offered by the defendant, and without such crossing. The judgment awards the plaintiff the principal sum of $66,900, and then provides that upon the payment of $13,800, the value of the property taken for the right of way, with interest and costs, and upon furnishing the accommodations therein specified within the time prescribed by the defendant to the plaintiff, the remainder of the principal sum, $53,100 and interest, shall be perpetually stayed. The judgment seems to be in substantial conformity with the offers made by the defendant on the trial. Any mere irregularity in the form adopted to enforce the defendant's own offer which does not operate to its prejudice must be treated as immaterial on principle and by force of the statute. Sec. 2829, Stats. (1898).

The time within which the defendant is required to perform the conditions specified in the judgment must be considered as stayed pending this appeal.

*By the Court.*—The judgment is affirmed on the appeal and on the cross-appeal.