In re Condemnation of Lands: Milwaukee Electric
    Railway & Light Company, Appellant, vs. Becker
    and wife, Respondents.

*November 13—December 11, 1923.*

*Eminent domain: Condemnation: Nature of proceedings: Compen-
    sation: Right to early payment: Stipulation as to future ac-
    tion of condemnor: Electric railways: Condemnation of non-
    exclusive easements: Lands for station purposes: Interest of
    public.*

1. Condemnation is a purely statutory proceeding under which an
    owner's rights to the use of his property are invaded for the
    benefit of the public.   It does not involve the voluntary sur-
    render of property or interests therein, but is compulsory,
    and in its true sense is a taking justifiable under the consti-
    tution because it is necessary to subserve the public and
    because adequate provision is made for compensation.   p. 186.
2. When property is taken under the right of eminent domain,
    the damages to be awarded must be founded upon a definite
    and fixed basis, and must be determined as of the time of
    the condemnation.   Such compensation must be arrived at
    from a general view of the entire situation as it exists at
    that time, unrestricted and unhampered by what may or
    may not be done by the condemnor in the future with respect
    to offers made by it.   p. 187.
3. The owner of the land taken is entitled not only to compen-
    sation but to the right to have the same fixed, determined,
    and paid at the earliest time reasonably possible.   p. 187.
4. In a proceeding by an electric railway company to condemn
    out of the fee in lands a special easement for right-of-way
    purposes and station grounds, an offer of the petitioner to
    grade and surface the property and to maintain such condition
    in the future, with the view of procuring from the commis-
    sioners or from a jury a diminution of the damages, cannot be
    considered; and the same is true with respect to the proffer
    of a forfeiture in the event of a breach of the conditions.
    p. 187.
5. The inclusion in the petition of the offers and stipulations
    in reference to the easement sought is not jurisdictional and
    they are not the proper subject of a demurrer, the objection
    to their inclusion being reached only by motion to strike out.
    p. 188.

6. Although an electric railway may be privately owned and repre-
sent an investment of private individuals under the corpo-
rate form, nevertheless, since it is a public-service corporation
possessing the power of eminent domain, the conduct of the
operation of its system is subjected to the legislative function
with respect to regulation in the interests of the public; and
in condemnation proceedings the general public enters as a
third party so that nothing will be done which will adversely
affect the public interest.   p. 189.

7. Where lands are attempted to be condemned by a street rail-
way corporation for right-of-way purposes, the necessity is
determined by the corporation itself, while the necessity for
acquiring lands for depot or station grounds is determined
by the judge.   p. 190.

8. Private property or interests therein must remain intact, sub-
ject to the owner's desire and control, excepting only where
a public necessity exists, in which event only the owner may
be compelled to part with his interests.   p. 190.

9. An electric railway company which desires to use part of a
parcel of land for right-of-way purposes and part of it for
station grounds may condemn a special easement in the prop-
erty, leaving all °rights, privileges, and easements not at-
tempted to be condemned vested in the owner.   The utility is
obliged to pay only for what is actually taken plus the owner's
damage to that part of the land and interests not taken, but
it is not required to condemn an exclusive right or easement.
p. 191.

   VINJE, C. J., dissents.

APPEAL from an order of the circuit court for Milwau-
kee county: WALTER SCHINZ, Circuit Judge.   *Reversed.*

The appeal is from an order dismissing the petition of
the *Milwaukee Electric Railway & Light Company* for the
condemnation of certain interests in lands of the respond-
ents sought to be acquired for the purposes of a right of way
and for station grounds.

The petitioner owns a right of way for the operation of
an electric street railway from the city of Milwaukee to
and through the city of Wauwatosa, and such right of way
has located thereon double tracks to within a short distance
of where the right of way emerges into what is known as

West Main street in said city of Wauwatosa, a northeasterly and southwesterly highway. The junction of petitioner's right of way with West Main street is located in about the center of the city of Wauwatosa, and in order to continue its double-track system up to and onto West Main street it prays by its petition to have certain interests of the respondents in and to a certain lot owned by the respondents, being 120 feet long and 34 feet wide, condemned.

The interests in the property attempted to be condemned and the surroundings may be more readily visualized by a reference to the map herein reproduced:

The triangle, being eighteen feet in width on its westerly side and fifteen feet on its easterly side, the base line being

23.43 feet, is to be used for right-of-way purposes, upon which to construct and maintain a second track, while the portion of the premises to the south, indicated by the space marked "Red," is to be used for station grounds. It will thus be noted that these proceedings contemplated the taking of all of the frontage of respondents' property on West Main street with the exception of nine feet thereof. It also appears that respondents' property, by reason of its location, is of special value for business purposes.

The interests to be condemned and certain rights to be reserved to the owners appear from the petition in the following language:

"That the petitioner intends to use the apex of said triangle down to the base line shown upon said map and indicated by its length 23.43 feet for a second track which is to be opened, surfaced so as to be substantially on a level with the sidewalk on the southerly side of West Main street adjacent thereto and which is not to be fenced or used so as to exclude the public from free access thereto; that petitioner intends to use the easement to be acquired over that portion of said triangle [marked "Red" in the map] for the sole purpose of allowing its patrons to pass thereover to and from its cars and said West Main street; that the same is to be paved with concrete at substantially the elevation of the sidewalk adjacent thereto, and is not to be in any manner separated from said highway or fenced and the owner of the remainder of the lot of which said triangle is a part and the public will have free and unobstructed access to every portion of said lot lying along the base line of said triangle over said triangle to and from said highway and to and from cars of the petitioner. . . . Failure to observe which conditions shall entitle the owner of the fee to a forfeiture of the easement of said premises and to re-enter and repossess himself with the same."

In all other respects the petition is in the usual form as required by the statutes.

The respondents appeared specially and moved to dismiss the proceedings on the ground that the court was with-

out jurisdiction of the subject matter.    Upon a hearing of the motion the learned circuit judge in substance held that the petitioner cannot carve out of the entire estate and fee owned by the respondents a lesser estate or easement and then condemn only such lesser estate; that to grant the prayer of the petitioner might result in the utter spoliation of the entire estate owned by respondents.    Thereupon the court ordered a dismissal of the petition, which order was duly entered, and from the granting of such order the petitioner has taken this appeal.

For the appellant there was a brief by *Van Dyke, Shaw, Muskat & Van Dyke* of Milwaukee, and oral argument by *James D. Shaw.*

*Gilbert J. Davelaar* of Milwaukee, for the respondents.

DOERFLER, J.    The issues involved herein may be subdivided as follows:

1. The offer to properly level that portion of the real estate included in the triangle so as to be substantially on a grade with West Main street, and to surface the same with concrete and to properly maintain such grade and surface in the future; and a proposed stipulation under which all rights of the petitioner may be forfeited upon the happening of a breach on its part of the conditions.

2. The reservation of an open space upon the land attempted to be condemned, for the use and benefit of the respondents and of the public, unobstructed by buildings, fences, or other structures.

In considering the first question presented we must bear in mind that proceedings for condemnation are purely statutory.    *Jeffery v. C. & M. E. R. Co.* 138 Wis. 1, 119 N. W. 879.    Under such proceedings the owner's rights to the use of his property are invaded for the benefit of the public.    It does not involve the voluntary surrender of property or interests therein, but is compulsory, and in its true sense is a taking, and such taking by right of eminent domain is

justifiable under the constitution, first, because it is neces-
sary to subserve the public interests, and secondly, because
adequate provision is made for compensation.   The ques-
tion of necessity is not involved in this branch of the case.
On the other hand, that of compensation becomes very vital.
It is clear that, when property is taken under the right of
eminent domain, the damages to be awarded must be
founded upon a definite and fixed basis and that they must
be determined as of the time of the condemnation.   The
owner is entitled not only to compensation but to the right
to have the same fixed, determined, and paid at the earliest
time reasonably possible, and such compensation must be
arrived at from a general view of the entire situation as it
exists at the time of the proceedings, unrestricted and un-
hampered by what may or may not be done by petitioners
with respect to their offers, in the future.   To hold other-
wise might open up an endless chain of litigation, resulting
in great embarrassment and expense to the owner.   These
considerations lie at the very bottom of the statutory pro-
ceedings for condemnation, and are in harmony not only
with the spirit thereof but with the constitutional provisions
on the subject.

In view of what has been said, we are therefore of the
opinion that the offer of the petitioner to grade and surface
the property attempted to be condemned, and to maintain
such condition in the future, with the view of procuring
from the commissioners or from a jury a diminution of the
damages, cannot be considered; and the same view must
necessarily be taken with respect to the proffer of a for-
feiture in the event of a breach of the conditions on the part
of the petitioner.   The maintenance of a proper grade or
surface becomes a question of fact upon which reasonable
persons might properly differ, and thus it is not difficult
to conceive of many instances which might arise in the fu-
ture which would involve a serious dispute between the par-
ties interested, and which might constitute a fruitful source

of litigation; likewise, the subject of a forfeiture, which is not favored in the law, might also lead to considerable dispute and to numerous lawsuits.

The question, under a somewhat different statement of facts, was directly involved in the case of *Thompson v. M. & St. P. R. Co.* 27 Wis. 93, where the railroad company had condemned a portion of the owner's property for right-of-way purposes, leaving the balance upon an elevation without proper lateral support, thus endangering the railroad right-of-way and the tracks, and to the detriment of the owner by the removal of the lateral support. In that case the railroad offered to build a proper retaining wall. The court on this branch of the case decided, as will appear from the following portion of the opinion quoted:

"It is true the defendant further offered to file, in connection with this proof, a stipulation that it would build a retaining wall along the plaintiff's lot, . . . but it is manifest that this was merely denying the plaintiff the right to recover the damages which the law gave him in consequence of the taking of his land and the construction of the road across his lot, and turned him over to another action in case the company did not build the wall. The plaintiff, however, was entitled to recover the whole amount of damages which he had sustained, without the expense of another lawsuit."

The same view has also been taken in the case of *McCord v. Sylvester*, 32 Wis. 451, where the conclusions in the *Thompson Case* are cited with approval.

The decisions above referred to appeal to us as good logic and in harmony with the general spirit of the law on the subject of condemnation in eminent domain proceedings. But while the petitioner's offers and stipulations cannot be considered herein, as has heretofore been indicated, and are deemed to be foreign and not pertinent to the proceedings, nevertheless the inclusion of these offers and stipulations is not jurisdictional, nor are they the proper subject of a demurrer. The objection can be reached only by motion to

strike out. *Neacy v. Drew,* 176 Wis. 348, 187 N. W. 218; *Moritz v. Splitt,* 55 Wis. 441, 13 N. W. 555; *Hawley v. Tesch,* 72 Wis. 299, 39 N.·W. 483.

The next vital question to be determined is whether a special easement such as was prayed for in the petition can be carved out of the owner's fee in the land, reserving to him an easement which can be used by him and the public in general, jointly with the patrons of the company. The question is an important one, both from the standpoint of the owner and of the street railway corporation. A street railway company, under the statutes of this state, is a public utility, and while the property is owned and managed by the company it is subject to certain rules and regulations as to rates, service, etc., in the interests of the public, and, in fact, such power to regulate on the part of the legislative body is based in part upon the right of the utility to condemn private property for public use. We have therefore presented the situation that while the utility may be privately owned and may represent an investment of private individuals in the form of stockholders, operated and managed by directors and officers representing the corporation, nevertheless, being a public-service corporation possessing the power of eminent domain, the conduct of the operation of its system is subjected to the legislative function with respect to regulation in the interests of the public. In all condemnation proceedings, therefore, while the owner and the company are the moving parties and are vitally interested, the general public enters as a third party, so that nothing may be accomplished which will adversely affect the public interests.

Sub. 2, sec. 1863a, of the Statutes, among other things provides that:

"Any such street or electric railway corporation may acquire and may hold or use such real estate or other real or personal property as may be necessary for the construction, maintenance and operation of its railroad and of the

stations, depot grounds and other accommodations reasonably necessary to accomplish the objects of incorporation."

Where property is condemned under the power of eminent domain, sec. 32.07 provides:

"The necessity of the taking shall be determined as follows:

"(1) . . .

"(2) If the application be . . . for the right of way for a railroad or a street or interurban railway up to one hundred feet in width, or a telegraph, telephone or electric line, the petitioner shall determine the necessity.

"(3) In all other cases, the judge shall determine the necessity."

Sec. 32.02 provides, among other things, that a street railway corporation can condemn land for any public purpose authorized by its articles of organization.

It will thus appear that, where lands are attempted to be condemned by a street railway corporation for right-of-way purposes, the necessity therefor is determined by the corporation itself, while the necessity for acquiring lands for depot or station grounds is a matter ultimately to be determined by the judge. In all matters pertaining to the taking of private property under the right of eminent domain, the question of necessity enters as a vital factor, and the reason therefor is quite evident. The right to own, hold, and use private property is guaranteed by both the federal and state constitutions, and such right is at the very basis of our economic system. Such right cannot be invaded excepting where the public interests so require. It follows, therefore, that private property or interests therein must remain intact, subject to the owner's desire and control, excepting only where a public necessity exists, in which event only, the owner may be compelled to part with his interests.

While it is true that the general practice in this state has been for railway corporations to condemn an exclusive

right or easement, and while in most instances it may appear that the acquirement of such exclusive right is a necessity in order to enable the corporation to properly perform the objects and purposes of its creation, nevertheless it cannot be said as a matter of law that it was the intention of the legislature to require in every instance the condemnation of such exclusive right. In the first place, it may be said to be decidedly for the owner's benefit to retain as much of his interest in the property intact as to enable him to utilize what remains to the best advantage and purpose; in other words, his rights should not be invaded in a degree greater than is required by the actual necessity. On the other hand, a street railway company, being a public utility designed to serve the interests of the public, ought not to be burdened with property or interests not necessary to carry out its objects and purposes, for in the final analysis, under our system of regulation, the expenditures must be borne by the public. These considerations are fundamental, and lie at the very threshold of the solution of the question to be determined.

Under the constitution and the statutes, compensation for the taking must be paid in money, and in those jurisdictions where courts have held adversely to the petitioner's contention herein the decisions are based mainly upon the theory that the tender of privileges, easements, or reservations constitutes a payment in property and not in money. It may also be said that in most of such cases the proceedings for condemnation involved an exclusive right, coupled with a tender or stipulation for certain easements or privileges. In that respect the instant case differs materially from such cases, because petitioner expressly alleges that its necessities and purposes will be fully served by the acquirement of a special easement, leaving all rights, privileges, and easements not attempted to be condemned vested in the owner, so that it can hardly be said that the petitioner attempts to pay

part of the damages in property or in an interest therein, but its efforts are directed towards acquiring only the rights which it actually needs, and for which it offers to pay, by way of compensation, the value as determined by the commissioners or the jury.

The case of *Thompson v. M. & St. P. R. Co.* 27 Wis. 93, has been referred to heretofore, but the precise question involved herein was not up for decision in that case. The same may be said of the case of *McCord v. Sylvester*, 32 Wis. 451.

In *Jeffery v. C. & M. E. R. Co.* 138 Wis. 1, 119 N. W. 879, upon proceedings had before the commissioners, an award was made for an exclusive right for right-of-way purposes, and upon an appeal taken from the award the company attempted to minimize the damages by offering certain crossings or easements, and this court held, upon an appeal, that upon the award of the commissioners, the payment of the damages into court, and the taking of possession of the property by the company, the only question to be considered on the appeal involves the subject of damages, which may be either increased or decreased, and at that stage of the proceedings no offer could be considered by the court to minimize damages, excepting only that of one or more statutory farm crossings. In the opinion of the court in that case it is said that:

"The appellant could not, on appeal from the award, elect to take a lesser estate or different interest than that taken below, and which it possessed itself of by compliance with the statute and taking possession. . . . The power to take is statutory, and under our constitution and statutes the appellant had the right to acquire the exclusive use of the land in question. It did so, and whether it could have taken a less interest, and whether such interest would have been sufficient for the public use described, we need not consider. The court below, upon the hearing for condemnation, determined and adjudged that it was necessary to acquire the exclusive use of the premises described in the

petition, and that determination must be held conclusive on appeal from the award."

It is true that the opinion in the *Jeffery Case* quotes from *Hill v. M. & H. R. Co.* 5 Denio, 206, where that court held, under proceedings similar to those in the instant case, adversely to the contention of the petitioner herein; but a full and careful reading of the entire opinion in the *Jeffery Case* convinces the reader that the question involved in that case and determined by the court involved merely the right of the company, upon an appeal solely from the award of the commissioners, to offer any other easement or privilege than that of a statutory farm crossing, and we can find no fault or criticism of the decision of the court upon the questions involved. What was said in the opinion in that case on the issue involved in the instant case is mere *dictum.*

In *Manitowoc C. P. Co. v. M., G. B. & N. W. R. Co.* 135 Wis. 94, 115 N. W. 390, the decision of this court turned upon the offer of the company to construct and maintain a statutory farm crossing, and while the opinion of the lower court in part is referred to and set forth, in which such court expresses a view favorable to the condemnation of a special easement, such question was not determined by this court in that case.

So that it becomes clear that the question here involved is still an open one in this state. ، A review, however, of the decisions in other jurisdictions reveals the fact that the clear weight of authority in this country is favorable to the contentions of the petitioner here. In the leading case upon the subject, *St. Louis, K. & N. W. R. Co. v. Clark,* 121 Mo. 169, 25 S. W. 192, 906, also reported in 26 L. R. A. 751, and in the note appended to such case, the decisions *pro and con* will be found. The able opinion in the *Clark Case* is quite persuasive. The statutes of Missouri do not in express terms provide that the company may leave in the land-

owner an easement. In the opinion the court refers to the decision in *Tyler v. Hudson,* 147 Mass. 609, 18 N. E. 582, and quotes approvingly from such opinion as follows:

"The right to take the land by purchase or otherwise does not involve the obligation to take the whole interest in land purchased or otherwise taken. That a right of way could be reserved in land taken by purchase will not be questioned. The objection to reserving a right in the owner in land taken *in invitum* is technical rather than substantial. It is true, that, in a sense, it may be said to create a new estate in him without his assent. A technical answer might be that, the estate being for his benefit, his consent and acceptance simultaneous with the taking will be presumed. The real answer is that the refinements and nomenclature of conveyancing will not be applied to a taking by right of eminent domain. No more land and no greater interest in it need be taken than the public use requires. If the right to make a particular use of the land is of benefit to the owner and puts no new burden upon him, and does not interfere with the public use for which the land is taken, there is no reason that he should be deprived of that use, and be paid its full value as damages. All the right to use the land, except that right, may be taken, and that be left in him to enjoy or not, as he pleases. If the right is of value, a valuable right in the land will remain in him, though he may refuse to exercise it. We are of opinion that the whole estate in the land was not taken, but that a right in it, appurtenant to the whole land of which it was a parcel, was left in the owners. Whether that right diminished the damage to the adjoining land should have been left to the jury."

In *Oregon R. & N. Co. v. Owsley,* 3 Wash. Ter. 38, 13 Pac. 186, it was held:

"We see no reason why any corporation seeking appropriation of a right of way should not be held entitled to all the benefit of all the ingenuity and economy it may have at command in the planning and construction of its works, not only with reference to outlay for material and labor, but also with reference to compensatory damages to property owners along its right of way. If it sees fit to leave un-

appropriated so much of the landowner's interest as consists in an easement for irrigating ditches across the right of way, there is no rule of law of which we are aware to prevent it doing so. It surely cannot be sound law that the corporation must take everything or nothing. Rather, it is bound to use its right of appropriation so as not to destroy or interfere with or debar any rights which may reasonably stand without prejudice to its own legitimate operations. The principle upon which it is allowed to become the agent of the commonwealth, to exercise the right of eminent domain, is not that it may, as such agent, do whatever it pleases, but rather that it may do whatever is reasonably necessary and convenient. Anything beyond this is not the taking of private property for public use, but the taking of it for private use."

The instant case presents a situation which forcibly brings to the foreground the absolute necessity for a holding in harmony with the *Clark Case*. We have here presented a situation where, unless the company can acquire the desired special easement, the value of the property of the respondents will practically be annihilated and the owners deprived of any reasonable use of the property for the purposes for which it is owned and held. In other words, the appropriation of an exclusive easement will work an utter despoilment of respondents' property, and that to the great detriment not only of the company and of the owners but also of the interests of the public. Surely the owners cannot complain of the appropriation of a special easement, for under the law they are entitled to compensation for their damages. The company would be obliged to pay for what is actually taken, plus the owner's damage to that part of the property and interests not taken, and the company would receive that which it actually needs and which is necessary to accomplish the purposes of its creation.

Under the express provisions of the statute it becomes discretionary with the judge to determine the necessity of the attempted taking for station grounds, and that question

can be met and determined at the proper stage of the proceedings before the judge of the lower court.

*By the Court.*—Order reversed, and the cause is remanded with directions for further proceedings in accordance with this opinion.

VINJE, C. J. (*dissenting*). As stated in the opinion of the court, the practice heretofore in our state has been, in cases of this kind, for the street railway to take an exclusive easement. I think that the statute clearly contemplates that only such an easement can be taken, and the reasons given for disregarding offers and stipulations apply equally to a division of estates in the same property between the street railway and the owner and the public. No one can tell to what litigations such joint estates may lead. Who is to pay taxes on this joint property? Who is liable for damages for injuries caused by its disrepair? Is it a street or private property? These and other questions will arise, and therefore the carving out of this partial estate is not authorized by the statute for the reasons given by our court in condemning offers and stipulations. If land is needed for street-railway purposes it may be taken for such purposes and the street railway gets complete and exclusive control of it. There is no statutory provision for carving a partial estate out of the property to be shared with the owner and the public, and the proceeding is, as stated by the court, wholly statutory. The argument that the expense is less to a public utility when a lesser estate is carved out may show the desirability of a different statute. It cannot change our present one. The case of *St. Louis, K. & N. W. R. Co. v. Clark,* 121 Mo. 169, 25 S. W. 192, 906, was one in which the railway company permitted the owner to retain a right of way over a portion of the land condemned. This involved no joint easement with the owner and the public in the land taken or in any part thereof. The

same is true in the case of *Oregon R. & N. Co. v. Owsley,*
3 Wash. Ter. 38, 13 Pac. 186, where the right to maintain
an irrigation ditch over the land taken was reserved to
the owner.   In each of these cases a specific, well known
easement of a defined part of the land was reserved out of
the grant.   Our statute recognizes such easements in the
case of farm crossings, but nowhere does it provide for a
joint estate in which the owner, the public, and the street
railway have undefined rights.