ROCHELEAU, Executrix, and another, Appellants, vs. CONSOLIDATED WATER POWER & PAPER COMPANY, Respondent.

*December 9, 1925—March 9, 1926.*

*Eminent domain: Stipulations eliminating issue: Trial and verdict on issue: Effect: Damages: Contingent on failure of dam or protective works: Form of judgment.*

1. Where defendant, owning a dam, received permission from the railroad commission to raise the maximum head from twelve to twenty-one feet, and landowners petitioned the circuit court for the fixing of compensation in condemnation proceedings, a stipulation and order for the appointment of appraisers, stating that it was necessary to take petitioners' land, did not prevent the defendant from contesting allegations as to taking, the stipulation directing the appraisers to ascertain the compensation and damages, "if any." p. 295.
2. Where, on appeal to the circuit court from the award of the appraisers, the question whether there was a taking was submitted to the jury, that question was an issue, regardless of whether it had been originally stipulated out of the proceedings. p. 296.
3. The landowners having asserted that damage resulted from the increased capacity of the dam, and the court having found that the dikes and the retaining walls were a part of the dam, the petitioners, to obtain damages, must show them to be consequent upon the increased capacity and not on the possibility of a future breach in the dam, the retaining walls, or the dikes. p. 297.

4. Where the jury found that the presence of the dikes and a
   pump prevented damage which otherwise would have oc-
   curred, it was proper for the judgment against the landown-
   ers to provide that it was without prejudice to further pro-
   ceedings if the dikes were removed, or a pump, used to aid
   drainage, ceased to operate.   p. 297.

APPEAL from a judgment of the circuit court for. Wood
county: BYRON B. PARK, Circuit Judge.  *Affirmed*.

The respondent owned a dam with its rights on the Wis-
consin river at Biron, said county, under authority given
by ch. 236 of the Laws of 1889, which confirmed rights
claimed since about 1854 and by an amending chapter, 209
of the Laws of 1893.   There was a maximum head of about
twelve feet until 1913.   In 1912 permission was granted
by the railroad commission to raise to twenty-one feet. Such
latter height was first reached about July, 1922.   Prior to
and in June, 1919, the brothers O. J. and *W. B. Rocheleau*
owned adjacent farms consisting of four government sub-
divisions and parts of two others lying south of the river
and the pond created by the dam and several miles above
said dam.   These two owners, with others, petitioned the
circuit court for Wood county in June, 1919, for the fixing
of compensation in condemnation proceedings.   Prior to the
hearing on such petition the two Rocheleaus purchased
additional lands consisting of five forties south of their
farms, and these lands, by stipulation, were included in the
condemnation proceedings.   So that thereafter the prop-
erty involved consisted of land owned by O. J. Rocheleau
in five government subdivisions and of six forties owned
by *W. B. Rocheleau.*

During these proceedings O. J. Rocheleau died and his
widow and executrix was substituted as a party.

Importance being attached by appellants to language used
in a stipulation of May, 1921, and repeated or embraced in
an order thereupon of June 1, 1921, which amended the

petition and appointed appraisers, we therefore insert from said order as follows:

"And it appearing from the amended petition and the said stipulation . . . that petitioners are entitled to maintain this condemnation proceeding and that it was and is [the stipulation had here inserted the word 'absolutely'] necessary for the said respondent . . . to take and use portions of the premises mentioned . . . to properly improve the said Wisconsin river and the pond and reservoir . . . and to maintain the dam, . . . and that it will be necessary for said respondent . . . to take and use additional portions of said premises . . . in order to maintain a head of twenty-one feet of water . . . in order to properly improve and maintain said pond and reservoir and dam and properly improve said river for said navigation purposes."

The stipulation added to the last clause quoted the following:

"And in addition to the value of the said portion of the said premises so taken heretofore and proposed to be taken, said petitioners are entitled to damages to the balance of said premises by reason of said taking as aforesaid."

The stipulation and order provided for the appointment of three named commissioners to ascertain and report the compensation, *if any,* and the damages, *if any,* sustained by the petitioners or any or either of them by reason of the taking as aforesaid. The petitioners other than the appellants here settled with respondent and were dismissed. Whether their lands were differently situated so far as an actual taking was concerned does not here appear.

In June, 1922, the commissioners awarded O. J. Rocheleau $4,600 and *W. B. Rocheleau* $2,550 as damages, from which award the two petitioners appealed to the circuit court, the respondent seeking no review.

On the trial in the circuit court in October, 1922, there appeared from the testimony the following general situation:

On the north of the property here involved, which was about one quarter of a mile from the original river bank, were embankments or dikes that prevented the waters of the dam from flowing onto the lands as well as shut off the waters in the former natural watercourses or sloughs from running into the river. These dikes had been built or added to by defendant and formed part of a highway running along the southerly edge of the pond for a considerable distance. If broken down in any substantial manner it would allow the water to drain to a point below the dam. It was conceded by defendant that were it not for such dikes a very considerable portion of these lands would be submerged and damaged. After obtaining permission to raise the head to twenty-one feet and in 1912, defendant purchased from O. J. Rocheleau for $600 a certain parcel in the northwest corner of his land lying to the north of said highway. This deed provided that the defendant should construct and maintain a wall and embankment on the northerly side of said highway so as to fully prevent the waters of the river from running upon, flooding, or overflowing any portion of the remaining lands, and also for a ditch to be so constructed by defendant as to draw the waters from the forty as completely as the same had theretofore been drained. Such dike was built and ditch dug.

At a point outside of *W. B. Rocheleau's* property and where a small watercourse was on his land and formerly ran on into the river, the defendant had placed an automatic electric power pump to lift any surface water collecting on such lands over the dike into the river. Defendant was under no legal obligation towards the petitioners to maintain it.

Petitioners had dug or used ditches already dug across said lands, all of which ditches emptied into the river at a point below the dam.

Much testimony was given, mostly conflicting, as to the effect or possible effect of seepage from the dam on these lands; the character of the soil; the underground flow or drainage; the proper depth of the water-table below the surface as affecting the agricultural value of the land; the value of the different subdivisions and of the farm buildings, etc.

Petitioners contend then and now that the said dikes being built and maintained by defendant and subject to being destroyed or the said pump to cease operating, they were entitled to now recover as damages the further injury to the lands were such removed, destroyed, or stopped.

Forty-four questions were submitted to the jury, separate ones for each of the eleven government subdivisions. They were as to the market value of each piece in June, 1919 (this being an agreed date); was there a taking of the land or any part thereof by flooding from the dam (this included flowing, seepage, as well as any flowage away from the lands being prevented by such dam or its backwaters); this latter was to be answered in two subdivisions: (A) with the dikes in place; (B) without the dikes; then if there was found a taking, the market value in June, 1919, of the land so taken: (A) with the dikes; (B) without the dikes. The result of the verdict was a finding of no damages to the lands of either petitioner with the dikes standing and of $14,560 damages to the O. J. Rocheleau property, and $3,750 to that of *W. B. Rocheleau* without the dikes.

Motions were thereafter made by the respective parties, and the trial court directed judgment for the defendant, stating in his decision, "to give petitioners judgment would mean that they would get many thousands of dollars in anticipation of damages which may never come to them and which it seems to me highly improbable that they will ever suffer."

After judgment upon affidavits, met by counter affidavits, petitioners moved for a new trial upon the ground that a showing was made that the situation since the raising of the head to twenty-one feet and subsequent to the trial demonstrated that there was actual damage though the dikes were maintained.

From the judgment (certain conditions of which are recited in the opinion) dismissing the proceedings with costs, petitioners appeal.

*W. E. Atwell* of Stevens Point, for the appellants.

For the respondent there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

The following opinion was filed January 12, 1926:

ESCHWEILER, J.    (1) Appellants claim that by the language used in the stipulation and order thereon, referred to in the statement of facts, the defendant was foreclosed from disputing that there was a taking of petitioners' land under the condemnation statutes and that there was properly before the court solely the questions of compensation for and the damages consequent upon a taking.   Some of the recitals in the stipulation and order and quoted above, if considered alone, might well support such a claim under the ruling in *Fritz v. Southern Wis. P. Co.* 181 Wis. 437, 440, 195 N. W. 321.   However, the answer to the petition expressly denied a taking, and in the more important parts of the stipulation and order, those describing the issues to be determined, two distinct elements were mentioned, namely, the compensation, *if any,* for the value of the property taken and proposed to be taken as alleged in the stipulation, and the damages, *if any,* resulting from such taking.   This language certainly did not prevent defendant from contesting the allegations as to a taking, for, if there was a taking of

the property for the uses and purposes of the dam, compensation therefor followed as matter of law, and was not an open question for appraisers or jury except as to amount. The italicised words just above, *if any,* must be given some effect, and the language of these declaratory clauses must be construed in effect to be, that if there be found no taking, then no compensation could be allowed; and if a taking were found, then and then only the amount of the compensation (as distinguished here from the much broader element of consequent damages) must be determined. Such contention now made does not appear to have been asserted on petitioners' behalf at the commencement of the trial, for that proceeded upon the issues as framed for the hearing before the commissioners. Neither was it suggested when the form of the special verdict was being discussed and agreed upon by counsel. This specific and independent question was submitted as to each parcel, viz.: "Was said land described in question ——, or any part thereof, taken in June, 1919, by flooding by water from defendant's dam? (A) With the dikes; (B) Without the dikes." If such issue had been originally stipulated out of the proceedings, as is now claimed by petitioners, it was in effect stipulated in again during the trial and by the agreed form of the special verdict. It was clearly an issue in the case.

(2) The judgment provided that it be without prejudice to further proceedings by petitioners or their successors in title against defendant or its successors for the proper redress by condemnation, injunction, or suit for damages in the event that the dikes referred to in the evidence be removed, or in the event the pump also referred to shall cease to operate. As to this provision petitioners contend that there is no warrant for the court inserting such conditions as to future possibilities. There is cited on this proposition *McCord v. Sylvester,* 32 Wis. 451, an action for the diversion of a stream where the commissioners reported no dam-

ages, "provided sufficient water shall be suffered to flow in . . . said creek for . . . necessary farm purposes;" this award was held properly disregarded because void for uncertainty (p. 455), and probably beyond the power of the commissioners to attach such conditions (p. 456); *Thompson v. M. & St. P. R. Co.* 27 Wis. 93, where defendant offered and asked to be permitted by the judgment, at some indefinite time in the future, to build at its expense a necessary retaining wall, at a cost of $100, which offer was held properly refused; and *Milwaukee E. R. & L. Co. v. Becker,* 182 Wis. 182, 196 N. W. 575, a condemnation of a special easement for a right of way and station grounds, in which case it was held that an offer of petitioner to grade and surface the property or for a future forfeiture in case of breach, but all this in diminution of damages, should not be considered (p. 187). The situation here is substantially different and not within the control of any such cases. Here the dikes or retaining walls were there at the time of the alleged taking, and, as well said by the trial court: "They are just as much a necessary part of the defendant's dam as the cement wall across the river." If petitioners are entitled to any damages by the raising of the head they are entitled to all such as shown consequent on such increased capacity, but not as to possible future damages consequent upon a breach in the dam. As to such, a new right of action must arise before petitioners, or their successors, can legally complain, and as to such possible future rights the judgment expressly safeguards them, if such an express provision were necessary.

(3) We deem it unnecessary to recite the evidence in this case to demonstrate the correctness of the conclusion reached by the trial court and by us now, that the questions of fact as to whether there was a taking, and if so the compensation and consequent damages, were for the jury and not absolute in favor of petitioners, as claimed by them.

(4) We find no wrongful denial by the 'trial court of a new trial upon the affidavits on petitioners' behalf and the counter affidavits as to the alleged condition of these premises after the trial and after a twenty-one foot head had been held.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on March 9, 1926.